**GENERAL ELECTRIC COMPANY,
Plaintiff–Appellant,**

v.

**G. SIEMPELKAMP GmbH &
COMPANY, Defendant–
Appellee.**

**No. 93–3111.**

United States Court of Appeals,
Sixth Circuit.

Argued May 2, 1994.

Decided July 21, 1994.

Richard D. Wetzel, Jr. (argued and briefed), Larry H. James, Luis Alcalde, Charles E. Brown (briefed), Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, Brian E. Hurley (briefed), Crabbe, Brown, Jones, Potts & Schmidt, Cincinnati, OH, for plaintiff-appellant.

John Cooper McDonald (argued and briefed), Keith W. Gizzi, Schottenstein, Zox & Dunn, Columbus, OH, for defendant-appellee.

Before: JONES and BATCHELDER, Circuit Judges; and GILMORE, Senior District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant General Electric Co. ("GE") appeals the district court's dismissal of its tort and contract claims against Defendant–Appellee G. Siempelkamp GmbH & Co. ("Siempelkamp") due to a forum selection clause in the parties' contract stating that the German courts have jurisdiction over all disputes concerning the contract. 809 F.Supp. 1306. We affirm.

I

In April 1987, GE contacted an American subsidiary of Siempelkamp, a German manufacturer of heavy machinery, and expressed an interest in Siempelkamp's "Conti Roll" presses built for the production of industrial laminates. These presses, which are approx-

---

[*] The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

imately 230 feet long, 17 feet high, and 60 feet wide, were to be used at a Coshocton, Ohio, GE plant that manufactures copper-clad technical laminates for the computer circuit industry. After this contact, all negotiations took place between GE and Siempelkamp's German headquarters, with a GE manager named Anthony J. Carbone as the primary negotiator for GE.[1]

On August 26, 1987, GE issued a standard-form purchase order for one press. On August 31, 1987, Siempelkamp issued an order confirmation for the press. At Siempelkamp's German headquarters two days later, Carbone and a Siempelkamp agent signed on the appropriate blanks under the word "accepted" of page 3 of the order confirmation, and Carbone initialled each of the other 59 pages of the document, which contained numerous substantive provisions. The order confirmation also contained a forum selection clause and a choice-of-law clause, which stated as follows:

> Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier. This shall also apply for claims in summary procedures on bills of exchange, promissory notes or cheques. The supplier is also entitled to file a suit at the principal place of business of the purchaser.

> All matters under this contract and any disputes arising hereunder shall be exclusively governed by the law of the Federal Republic of Germany. The uniform laws on international sales (Hague Rules) shall not be applicable.

J.A. at 122.

On November 16, 1987, Siempelkamp sent GE a three-sentence letter acknowledging changes in the numbering systems GE uses for its purchase orders and accounts. That letter clearly stated that Siempelkamp believed the contract terms regarding the purchase of the presses could be found in the order confirmation: "[W]e have to point out that as the only contractual basis for the performance of the contract our order confirmation dated August 31, 1987, which was initialled and signed by both sides, remains valid." J.A. at 447. Although GE's purchasing manager apparently read and received the letter, for he made a notation to file it, there is no evidence that GE responded to this letter.

GE purchased an additional press in 1988, and Siempelkamp issued a similar order confirmation for it on May 24. On May 26, Carbone and a Siempelkamp agent signed on the "accepted" blanks of the order confirmation. J.A. at 136. This document contained a forum selection clause identical to the one in the 1987 agreement.

On April 7, 1992, GE filed a complaint in the U.S. district court alleging breach of contract, violations of the Uniform Commercial Code, fraud and/or misrepresentation, breach of express and implied warranty, and products liability in connection with the purchase, sale, installation and operation of the presses. On January 7, 1993, the district court granted summary judgment in favor of Siempelkamp,[2] holding, *inter alia,* that "no genuine issue of material fact has been shown in regard to plaintiff's agreement to the forum selection clause." J.A. at 36. The court dismissed the action without prejudice, and this appeal followed.

We review a grant of summary judgment *de novo. Rector v. General Motors Corp.,* 963 F.2d 144, 146 (6th Cir.1992). The question on review of a summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Inferences to be drawn from the underlying facts must be viewed in the light most favor-

---

1. During the relevant time period, Carbone held the titles of "Manager of Manufacturing Engineering and Facilities" and "Manager, Manufacturing Engineering Programs."

2. Though the court's decision was made in response to a motion to dismiss, the court in-

formed the parties that summary judgment standards would be applied and asked for evidentiary submissions. The court then applied summary judgment standards, as it considered matters outside of the pleadings. *See* Fed.R.Civ.P. 12(c).

able to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

## II

■ The occurrences here appear straightforward. GE made an offer to Siempelkamp in a purchase order. Siempelkamp then submitted a counteroffer, in the form of an order confirmation that contained terms very different from the purchase order. GE signed and thereby accepted that counteroffer, creating a binding contract. Both parties are therefore bound by the terms of the contract, including the forum selection clause in the counteroffer.

■ GE makes several arguments that challenge this logic, none of which are ultimately convincing. GE first argues that Carbone did not have the authority to act as an agent binding GE to the contractual terms. This position is supported by an affidavit from Jeffrey O. Jacobson, the senior officer in charge of GE's Coshocton plant, who stated that Carbone did not have the authority to approve or amend contracts for GE. However, Carbone bound GE by acting as the company's apparent agent. The Ohio Supreme Court has stated that in order for a principal to be bound by the acts of an agent under the theory of apparent agency it must be shown:

> (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Nat'l Bank*, 61 Ohio St.3d 570, 576, 575 N.E.2d 817, 822 (1991).[3]

GE certainly held out Carbone as possessing the authority to act as its agent. Carbone led GE's negotiations with Siempel-

kamp over several years, and GE never expressly informed the German company that Carbone lacked authority to bind GE to a sale. GE's silence in this regard is especially significant because, before performance of the contract began, GE received copies of the order confirmation that Carbone signed, as well as the November 16, 1987, letter from Siempelkamp that indicated that the terms of the order confirmation constituted the only contract between the parties. Carbone continued to be offered as GE's agent throughout the performance of the contract, as Carbone continually signed modifications and addenda to the contracts, altering such important things as the equipment to be delivered and the time schedules for delivery and for payment. On these facts, Siempelkamp had ample reason to believe that Carbone had authority to act as GE's agent in the approval of a contract.

■ GE next relies on Ohio Revised Code § 1302.10 (adapted from § 2–207 of the Uniform Commercial Code), which states that when an acceptance states additional or different terms from the offer, a contract nevertheless is usually formed. GE argues that Siempelkamp's order confirmations operated as acceptances of GE's offers, rather than as rejections and counteroffers. However, as the Ohio Supreme Court has stated, that general rule of § 1302.10 does not apply where parties disagree as to "dickered for" terms:

> In the usual case, the seller's written confirmation "operates as an acceptance even though it states terms additional or different from those offered...." R.C. 1302.-10(A). In such cases the material terms of the contract are the buyer's terms. This rule, however, does not apply where the parties disagree as to "dickered for" terms. In such a case, contract formation does not occur until both sides have at least partially performed.

*Alliance Wall Corp. v. Ampat Midwest Corp.*, 17 Ohio App.3d 59, 62, 477 N.E.2d 1206, 1210–11 (1984) (footnotes omitted) *see also U.S. Indus. Inc. v. Semco Mfg., Inc.*, 562

---

**3.** We may apply either Ohio law or federal law in determining the enforceability of a forum selection clause, since each treat clauses in a similar manner. *See Interamerican Trade Corp. v. Companhia Fabricadora de Pecas,* 973 F.2d 487, 488–89 (6th Cir.1992).

F.2d 1061, 1066 (8th Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977). A footnote to *Alliance Wall* provides an example of such a "dickered term": if the return document responds with a different price than that in the original offer, there is no acceptance under § 1302.10. *Id.,* 17 Ohio App. at 63 n. 5, 477 N.E.2d at 1211 n. 5 (quoting White & Summers, Uniform Commercial Code 37 (2d Ed.1980)).

■ In the present case, as GE acknowledges, Siempelkamp's August 1987 order confirmation contained not only different prices from GE's original offer, but also different terms of payment, placement of transportation responsibility, provisions for title passage, and delivery date. Thus, according to *Alliance Wall,* there was no acceptance of GE's offer in its purchase order. The only acceptance is that of Carbone, as GE's agent, when he signed the order confirmation. Even if Siempelkamp's confirmation order could be deemed an acceptance of GE's offer, Carbone accepted the differing terms in the confirmation order by signing it. "Section 2–207 of the UCC is designed to prescribe, by law, what non-negotiated terms are to be considered a part of a contract—not to exclude those terms specifically negotiated and agreed upon." *Olefins Trading, Inc. v. Han Yang Chem. Corp.,* 9 F.3d 282, 287–88 (3d Cir.1993).

### III

■ GE argues that even if the forum selection clause applies, it is not exclusive or mandatory. The text of the clause is as follows:

> Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier. This shall also apply for claims in summary procedures on bills of exchange, promissory notes or cheques. The supplier is also entitled to file a suit at the principal place of business of the purchaser.

J.A. at 122.

Because the clause states that "all" disputes "shall" be at Siempelkamp's principal place of business, it selects German court jurisdiction exclusively and is mandatory.

*See The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 2, 15, 92 S.Ct. 1907, 1909, 1916, 32 L.Ed.2d 513 (1972) (holding that forum selection clause stating that "any" dispute arising from a contract "must" be brought before a London court is binding on the parties, unless the clause is shown to be unreasonable or unjust). The clause is clear and should be enforced according to its terms.

■ Finally, GE claims that it would be unreasonable to enforce the clause here. It is true that we may refuse to enforce even an unambiguous, bargained-for forum selection clause if a party can "clearly show that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916; *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 594–95, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991) ("It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness.").

In this case, we take judicial notice that GE is a sophisticated party that is used to dealing with complex international business transactions. We see no evidence that GE was exploited or unfairly treated in this transaction. *See Carnival Cruise Lines,* 499 U.S. at 594–95, 111 S.Ct. at 1528 (finding a forum selection clause fundamentally fair because there was no evidence that the drafter of the contract had an intention to defuse legitimate lawsuits nor obtained consent to the clause by fraud or overreaching; rather, the drafter chose to select its principal place of business as a forum). With regard to GE's implication that Ohio is the reasonable venue for this suit, we note that Germany also has significant contacts with actions arising out of the agreement: the deal was negotiated and signed in Germany, much of the contract was performed in Germany, the presses were manufactured primarily in Germany, and witnesses presumably would be located in Germany, as well as the United States. Application of the forum selection clause is not unreasonable here.

## IV

Due to the forum selection clause in the parties' contract, we AFFIRM the dismissal of this action without prejudice.