**Frank Kevin FISCHER,**
**Plaintiff–Appellant,**

v.

**UNITED PARCEL SERVICE,**
**INC., Defendant–Appellee.**

No. 02–1071.

United States Court of Appeals,
Sixth Circuit.

Jan. 21, 2004.

Michael A. Mixer, Ann Arbor, MI, for Plaintiff–Appellant.

James F. Hermon, Debra M. McCulloch, Dykema Gossett, Detroit, MI, for Defendant–Appellee.

Before SILER, BATCHELDER, and COOK, Circuit Judges.

BATCHELDER, Circuit Judge.

Appellant Frank Kevin Fischer appeals the district court's grant of summary judgment to United Parcel Service ("UPS") on his claims under Michigan's Elliot–Larsen Civil Rights Act ("ELCRA") for race discrimination and retaliation, and the judgment entered by the district court in favor of UPS following a jury trial on his sole surviving claim of racial harassment. Because the district court properly rejected Appellant's contentions at the summary judgment phase, and we find no merit to Fischer's claim of error in the instruction to the jury on his racial harassment claim, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Frank Kevin Fischer ("Fischer"), who is African–American, became an employee of UPS in 1985, rising through the ranks until, in 1997, he was promoted to National Account Manager ("NAM"), a position he still held with UPS as of the commencement of this litigation. NAMs are responsible for developing and maintaining business accounts assigned to them by their superiors at UPS. Fischer's chief account while a NAM was the Ford Motor Compa-

ny ("Ford") small package account. He serviced this account until December, 1999, when he was transferred to four other accounts.

Fischer claims that his transfer from the Ford account was due to racial animus on the part of his supervisor, James Riley. However, it is undisputed that prior to his removal from the account, Fischer's relationship with Ford's primary account manager, Jerry Campbell, had become strained. This tension was due in part to Fischer's insistence that Campbell was not dealing with UPS in accordance with certain contracts between Ford and UPS. It was also due to Campbell's having discovered that he was the subject of a embarrassing investigation by Ford, triggered by Fischer's telling management officials of UPS that Campbell had an unethical relationship with FedEx that suggested why Campbell was directing to FedEx shipping business that Fischer believed should have gone to UPS. Although Fischer admits that he was the source of this story, he vigorously denies that he told anyone at UPS that he had actual evidence of Campbell's alleged relationship with FedEx. It is undisputed that because of these allegations, Ford initiated an investigation of Campbell; that Campbell asked that Fischer be removed from the Ford account; that other Ford representatives expressed to UPS their belief that Fischer had claimed to have actual evidence of Campbell's alleged misconduct, and their anger at Fischer; and that UPS made a concerted, but ultimately unsuccessful, attempt to determine whether Fischer had in fact said that there was hard evidence of Campbell's alleged misconduct. Finally, it is undisputed that UPS was concerned about its continued relationship with Ford, and that Fischer was not disciplined as a result of this incident, but was removed from the Ford account and transferred to other accounts without loss of title, salary or benefits and without imposition of additional duties.

Although it was primarily his transfer from the Ford account that precipitated this lawsuit, Fischer also complains generally of his treatment from June, 1997, when he became a NAM, to December, 1999, when he was removed from the Ford account. Specifically, Fischer points to several incidents that he claims constituted race discrimination, retaliation, and harassment.

First, Fischer describes an exchange at an initial meeting with his new supervisor, James Riley:

I described myself to Mr. Riley as a nontraditional student. Mr. Riley asked me what that meant and I said it means I'm a student who didn't get-obtain my degree the first time I went to college and that I was going back to complete it. At that time, Mr. Riley smiled and said, oh, I thought that you meant you were a black guy who didn't play basketball for your school.

The parties disagree about whether this exchange was in "a spirit of good-natured jest."

Next, Fischer complains that following his promotion to NAM, when he was asked to relocate to Detroit to better service the Ford account, Riley attempted to dissuade him from building a house in the Detroit area. Fischer suggests that Riley's insistence he not build a house was motivated by racism. He admits, however, that the UPS District Controller for Metro Detroit, an African–American woman, expressed opposition to his plan to build a house during the relocation process, and that he did in fact build the house.

Fischer cites two other incidents as demonstrating racial animus: in one, Riley asked Fischer, after a meeting with an African–American client, if he had acted

"homey" enough; in the other, Riley asked a third person to criticize Fischer's wearing to work on a "casual Friday" a purple golf shirt emblazoned with the logo "100 Black Men of America." He also complains of two generally discriminatory or harassing aspects of his relationship with superiors at UPS: an alleged lack of "support" for his strategies as a NAM, and allegedly unrealistic performance quotas that he was expected to meet. Lastly, at trial, Fischer made general allegations about the use of racial slurs at UPS, but pointed to no specific instances in support of those allegations.

Fischer filed this action in state court under ELCRA, MICH. COMP. LAWS § 37.2101 *et seq.*, alleging racial discrimination at the hands of his superiors at United Parcel Service ("UPS"), a racially hostile work environment (so styled by the complaint, but referred to throughout the proceedings, including in the jury verdict, as "racial harassment") due to the actions of his immediate supervisor, and retaliation as a result of his complaining about the racial discrimination and hostile work environment at UPS. The district court granted summary judgment without written opinion or statement of reasons with respect to the race discrimination and retaliation claims, but denied it with respect to the harassment claim. The racial harassment claim proceeded to jury trial, the jury found for UPS, and the court entered judgment on December 14, 2001. Fischer's timely appeal followed.

## II. DISCUSSION

We do not condone the district court's failure to provide any record of its reasoning in granting summary judgment to UPS on these claims. However, because we review de novo a district court's order granting summary judgment, and we must apply the same standard that the district court is required to apply, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999)

(en banc), we may review the order before us, even in the absence of any record of the district court's reasoning. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To withstand summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing the grant of summary judgment, this court will consider only those facts in evidence at the time the district court granted summary judgment. *See Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 39 (D.C.Cir.1987). Thus, for the purposes of our review, we have been careful to distinguish between facts established prior to trial and those established at trial.

### A. Racial discrimination.

The purpose of ELCRA is to prohibit discrimination against persons in a protected class and generally to inhibit the use of stereotypes, biases, or prejudices in the workplace. *See Zanni v. Medaphis Physician Serv. Corp.*, 240 Mich.App. 472, 612 N.W.2d 845, 848 (2000). Specifically, ELCRA prohibits an employer from:

Fail[ing] or refus[ing] to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege or employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

MICH. COMP. LAWS § 37.2202(1)(a).

■ An ELCRA plaintiff, such as Fischer, who lacks direct evidence of discrimination may establish a prima facie case using the same circumstantial evidence scheme used to prove a federal civil rights claim. *See Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir.1997). To establish his prima facie case under ELCRA, Fischer needs to show that he is (1) a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) was replaced by a person outside the protected class. *Cicero v. Borg–Warner Automotive, Inc.*, 280 F.3d 579, 584 (6th Cir.2002). In all essential respects, this test tracks that of the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The parties agree that Fischer meets three of the four requirements. That is, Fischer is a member of a protected class, was replaced by a Caucasian, and was qualified for the position. But to establish that he suffered an actionable adverse employment action, Fischer must show that there was a "materially adverse" change with respect to his employment. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996). "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* We offered a list of objective factors in *Kocsis* with which to judge whether an employee has suffered an adverse employment action: (1) significantly changed responsibilities; (2) decreased salary; (3) less distinguished title; and (4) material loss of benefits. *Kocsis*, 97 F.3d at 886. And Michigan courts elaborate what constitutes an adverse employment action: it (1) must be "materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities, and (2) must have an objective basis for demonstrating that the change is adverse, rather than the mere subjective impressions of the plaintiff." *Meyer v. City of Center Line*, 242 Mich.App. 560, 619 N.W.2d 182, 188 (2000) (internal quotations omitted).

■ Fischer satisfies neither test. He has shown no objective evidence that the Ford account was better than the four new accounts to which he was transferred. His job responsibilities have not changed; only the accounts for which he is responsible have changed. He suffered no decrease in salary or benefits, and he maintained the same title. Fischer's complaint that he was "banished to the four smaller accounts" does not establish an adverse employment action. A change in the accounts is merely a change in form, not a change in responsibilities. Even viewing the evidence in the light most favorable to Fischer, we find no more than "a mere scintilla" on which he can rely to support his assertion that his transfer from the Ford account to four other accounts was adverse. Further, our de novo review of the record persuades us that he has presented no more than a scintilla of evidence that he suffered any other adverse action "with respect to employment, compensation, or a

term, condition, or privilege or employment." MICH. COMP. LAWS § 37.2202(1)(a). Whatever the district court's reasoning, summary judgment in favor of UPS on this count is proper.

### B. Retaliation.

Michigan's ELCRA provides that it is unlawful to:

Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

M.C.L. § 37.2701(a). In order to make out a prima facie case of retaliation, Fischer must prove that(1) he engaged in a protected activity; (2) this was known by the defendant; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987); *Polk v. Yellow Freight System,* 876 F.2d 527, 531 (6th Cir.1989).

Again, Fischer has provided no evidence sufficient to meet the adverse employment action element of the test. Because Fischer cannot demonstrate that UPS took any employment action adverse to him, he cannot establish a prima facie case of retaliation. We therefore need not address the other elements, and the disputed facts with regard to them are not material. Summary judgment in favor of UPS on this claim is proper.

### C. The Jury Instructions on Racial Harassment.

A properly preserved challenge to the legal propriety of jury instructions raises a question of law that we review de novo. *Jones v. Federated Financial Reserve Corp.,* 144 F.3d 961, 966 (6th Cir.1998).

We review for abuse of discretion the district court's decision whether to use a parties' jury instruction—provided, of course, it is legally accurate. *Hisrich v. Volvo Cars of North America, Inc.,* 226 F.3d 445, 449 (6th Cir.2000). In reviewing jury instructions, we look at them "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72 (6th Cir.1990).

Fischer contends on appeal that the district court erred in giving, in addition to the Michigan Standard Jury Instruction defining racial harassment, an instruction requested by UPS regarding the elements of a racial harassment claim. Specifically, he objects to the portion of that instruction that reads:

To establish he was racially harassed, Plaintiff must prove by a preponderance of the evidence that the workplace was permeated with discriminatory intimidation, ridicule or insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment.

Before us, Fischer complains that Michigan law does not require the plaintiff to prove that the workplace was permeated with the discriminatory conduct; rather, Michigan law permits a plaintiff to prove that the hostility in the environment was either severe or pervasive. Before the district court, however, Fischer objected only that the instruction requested by UPS was "redundant and possibly confusing to the jury given the clearness of [the Michigan Standard Jury Instruction]."

■ UPS contends, and we agree, that Fischer did not preserve his objection to the jury instruction requested by UPS and given by the district court. A general objection is insufficient to preserve an issue for appeal. *See* FED. R. CIV. P. 51 (2001) ("No party may assign as error the

giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.") *See also Palmer v. Hoffman,* 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943) ("In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial.") The district court was not put on notice of the objection Fischer raises here by Fischer's objection that the requested instruction was "redundant" or "possibly confusing." Indeed, the claim of redundancy would seem to argue against Fischer's objection on appeal that the instruction was incorrect. Because Fischer failed to preserve his objection to the jury instruction, he has waived this assignment of error.

Our review is therefore limited to review for plain error.

In the absence of an express objection, we look to whether the instruction in question, in proper context, and considering the instructions in their entirety, constituted clear and prejudicial error.... [I]n light of Fed.R.Civ.P. 51, we may consider any such error not objected to as waived, except where there is "plain error" or it "required action by the reviewing court 'in the interests of justice.'" *Batesole v. Stratford,* 505 F.2d 804, 808 (6th Cir.1974) (quoting *O'Brien v. Willys Motors, Inc.,* 385 F.2d 163 (6th Cir.1967)). *See also Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987). There is a question, moreover, whether we consider even obvious and prejudicial error in a jury instruction in the absence of procedural steps,

timely objections, a motion for a new trial, or any other post-judgment motion addressing this issue. *See Murphy v. Owens–Illinois, Inc.,* 779 F.2d 340, 346 (6th Cir.1985); *Wiskotoni v. Michigan Nat'l Bank–West,* 716 F.2d 378, 382 (6th Cir.1983).

*Chonich v. Wayne County Community College,* 973 F.2d 1271, 1275 (6th Cir.1992). We find no plain error. Nothing in the instruction given by the district court requires action by us "in the interests of justice." We have carefully reviewed the record, and we conclude that as a matter of law the evidence submitted to the jury does not support a finding that UPS engaged in racial harassment or that Fischer was subjected to a hostile work environment.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.