NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0874n.06
Filed: October 26, 2005

No. 04-4179

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

THE GOODYEAR TIRE & RUBBER )
COMPANY; ASSOCIATED AVIATION )
UNDERWRITERS, INC., )
)
  Plaintiffs-Appellants, ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
v. ) NORTHERN DISTRICT OF OHIO
)
S-TEC CORP., )
)
  Defendant-Appellee. )

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. Goodyear Tire & Rubber Company appeals the district court's order

granting S-TEC summary judgment on Goodyear's breach-of-warranty claim. Because we find the

summary judgment evidence presents a sufficient disagreement to require submission to a jury, we

reverse and remand.

I.

Goodyear owned and operated airships for which Lockheed Martin Corporation provided

technical support.[1] Goodyear charged Lockheed with acquiring a flight control system for one of

_____

[1] As the result of an acquisition, Lockheed Martin assumed the support role from Loral
Corporation. This opinion refers to both Loral and its successor Lockheed Martin as "Lockheed."

its airships, and Lockheed assigned two of its employees, Fred Brady and Leslie Meyers, to the task.

Brady and Myers's search for vendors led them to S-TEC. S-TEC sent a proposal for development

of an airship flight control system to Goodyear, and, following a roundtable discussion of the

proposal with Brady, Meyers, and Goodyear employees, S-TEC revised its proposal. It sent the

Revised Proposal to Goodyear, specifying that the proposal would expire on October 31, 1995. On

October 25, Brady phoned S-TEC's Jim Odom, telling him Goodyear was going to purchase the

system, and initial funding was being finalized. On November 1, Goodyear mailed a Purchase Order

to S-TEC and also faxed a "Reprinted Purchase Order" to S-TEC at S-TEC's request. The Purchase

Order's terms matched the terms of S-TEC's Revised Proposal save the notation, "to the extent that

the conditions thereof are not in conflict with any terms or conditions noted on this purchase order."

The conditions on the purchase order differed from the proposal in a key respect: the Goodyear

Purchase Order's warranty terms would have triggered the UCC four-year default provision.

Just short of four years later, Goodyear's airship crashed, prompting Goodyear to sue S-TEC

for breach of warranty. S-TEC sought summary judgment, pointing to its one-year warranty

provision in its Revised Proposal and claiming Brady accepted that proposal on Goodyear's behalf.

Goodyear countered that Brady, a Lockheed employee, lacked authority to bind Goodyear. Instead,

Goodyear claims that its purchase order constitutes an offer and that S-TEC accepted that offer

through its performance. The district court determined—without analyzing the bounds or basis of

Brady's legal authority to bind Goodyear—that Brady's phone call to Odom accepted S-TEC's offer

(with its one-year warranty) thus entitling S-TEC to summary judgment.

II.

We review the district court's summary judgment decision de novo. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is appropriate where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We consider all evidence and draw all reasonable inferences in the light most favorable to Goodyear, the nonmoving party. *Minadeo*, 398 F.3d at 756.

A. Law of the Case

During an early evidentiary hearing at which S-TEC was challenging the court's jurisdiction, the district court made the observation: "I think it has been established that he's (Brady) Goodyear's representative and S-TEC believed he was Goodyear." Brady was the Lockheed employee tasked by Lockheed to determine purchasing requirements; indeed, the district court, in granting S-TEC summary judgment, seems to rely on that prior conclusionary statement. S-TEC urges upon us the proposition that these comments by the district court amount to a decision insulated from further review by the law-of-the-case doctrine. We think not. The district court's comments pertained to whether S-TEC was doing sufficient business in Ohio to be subject to personal jurisdiction. That personal jurisdiction question is quite different from the summary judgment issue the district court faced later, i.e., whether there existed a material issue of fact as to Brady's apparent authority to accept an offer on behalf of Goodyear. We note that the court's early comments settling the

preliminary jurisdiction issue preceded its grasp of the full evidentiary record—including the results of the parties' discovery, much of which took place later. Without the benefit of summary judgment briefing and the supporting evidence marshaled by each party, the court could not have decided the issue of the scope of Lockheed's and Brady's agencies so as to establish the law of the case. *See United States v. Hatter*, 532 U.S. 557, 566 (2001).

Even were the court's observation to be treated as the law of the case, it would not be insulated from review. An appellate court may always review the lower court's legal and factual determinations pursuant to the proper standard of review. Regardless of the district court's precursory call on the subject of Brady's agency, Brady's authority to bind Goodyear to a $450,000 contract remained at issue until resolved by evaluation of all of the evidence either on summary judgment or at trial. Material factual disputes in this case require resolution by a jury.

## B. Apparent Authority

Goodyear contends that factual issues regarding whether Brady was clothed with apparent authority to accept S-TEC's revised proposal required a trial. Though we lack the benefit of the reasoning and evaluation of this issue by the district court, this court may consider its merits de novo. *See Fisher v. United Parcel Serv., Inc.*, 90 Fed. Appx. 802, 805 (6th Cir. 2004) ("[B]ecause we review de novo a district court's order granting summary judgment, . . . we may review the order before us, even in the absence of any record of the district court's reasoning.").

The parties do not contest Brady's lack of actual authority; we look to apparent authority as the critical issue. To bind a principal on the basis of apparent authority under Ohio law, the evidence must show:

> (1) the principal held the agent out . . . as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed sufficient authority.

*Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421, 425 (6th Cir. 1998). "[A]pparent authority is a legal conclusion, [but] its elements are chiefly factual matters . . . for the jury." *Id.* at 426 n.1. Our careful review of the record, the parties' arguments, and the applicable law convinces us that issues of fact preclude summary judgment on the issue of Brady's apparent authority.

### 1. Goodyear's Holding Out

Examination of evidence offered on the subject of whether Goodyear held Brady out to have authority to bind it to this contract reveals that it is not so one-sided that one party must prevail as a matter of law. Although Brady's business cards shown to S-TEC representatives bore the Goodyear logo, the cards identified him as a Lockheed employee. Deposition testimony confirmed Brady's role as an engineering aide, that he participated extensively in the S-TEC negotiations, but his function was chiefly technical. S-TEC relies on those negotiations as evidence of Brady's authority, but the roundtable discussion of S-TEC's proposal involved not only S-TEC, Brady, and Meyers, but also a number of Goodyear employees. Meyers testified he introduced himself and

Brady at the roundtable as "Loral Defense System employees under contract to Goodyear to provide technical support."

S-TEC points to Goodyear's failure to disavow Brady's authority as proof of Goodyear's holding out Brady as having authority to contract on its behalf, citing *General Electric Co. v. G. Siempelkamp GmbH*, 29 F.3d 1095 (6th Cir. 1994). The *Siempelkamp* court determined General Electric held its manager out "as possessing the authority to act as its agent" where the manager "led GE's negotiations with Siempelkamp over several years, and GE never expressly informed [Siempelkamp] that [the manager] lacked authority to bind GE to a sale." *Id.* at 1098. Our case shares the absence of an express disavowal with *Siempelkamp*; yet the crucial, affirmative "holding out" aspects distinguish General Electric's conduct of negotiation in *Siempelkamp* from Goodyear's here.

General Electric's manager traveled to Siempelkamp's headquarters and signed an order confirmation as "accepted," initialing each of the other fifty-nine pages. *Id.* at 1097. Siempelkamp later sent General Electric a letter, part of which read, "[W]e have to point out that as the only contractual basis for the performance of the contract[,] our order confirmation . . . which was initialled [sic] and signed by both sides, remains valid." *Id.* The court found General Electric's silence after receiving this letter to be "especially significant." *Id.* at 1098. The court also found "especially significant" that, "before performance of the contract began, GE received copies of the order confirmation that [its manager] signed." *Id.* What is more, several months after this first contract, General Electric and Siempelkamp entered into another contract in the same manner. *Id.*

at 1097. By contrast, Brady never signed a contract on Goodyear's behalf, and there was no history

of Brady contracting with S-TEC for Goodyear. The competing inferences permitted by the agreed

facts require resolution by trial.

### 2. S-TEC's Good-Faith Reasonable Belief

Record evidence pertaining to the second prong of Ohio's test for finding apparent authority

also argues for a trial rather than summary judgment. As regards what the record shows about S-

TEC's belief in Brady's authority, Goodyear points us to Brady's testimony that he made it

"absolutely clear to S-TEC" that Goodyear itself would issue a purchase order. S-TEC employee

James Irwin testified he knew Brady could not approve the contract; it would need to be approved

by Goodyear's headquarters. S-TEC's Odom understood there would be a purchase order or a

signed contract, and he believed Goodyear was not obligated on the flight control system until it

issued the purchase order. And, tellingly, S-TEC issued its invoice for the down payment on the

contract to Goodyear's "L.S. Dreier (Bud)"— the individual whose name appears on the November

1 purchase order—rather than to Brady. This indication that S-TEC recognized Goodyear's

Purchase Order rather than Brady's phone call as creating the contract reinforces our view that

genuine issues of fact exist as to S-TEC's good-faith belief in Brady's authority to accept for

Goodyear.[2]

---

[2]Indeed, in support of its initial motion for summary judgment, S-TEC argued that its "proposal was an offer and Goodyear's purchase orders were an acceptance, which unsuccessfully attempted to include terms different from those in the offer in an inconspicuous manner."

C.  Purchase Order Terms

In the alternative S-TEC posits that, even if Brady did not have apparent authority to bind Goodyear, the contract it entered into with Goodyear included the limited twelve-month warranty because Goodyear's faxed "Reprinted Purchase Order" omitted any terms or conditions (it was an abbreviated version of the mailed original) and thus did not conflict with the Revised Proposal.  S-TEC claims reliance on that reprint as confirming acceptance of the twelve-month warranty.  Accepting this proposition, S-TEC argues, permits the court to ignore the later, unanticipated Purchase Order with conflicting warranty terms.  Thus, the argument goes, S-TEC's Revised Proposal embodied the contract terms, including the twelve-month warranty.  That warranty having expired, Goodyear's claim for its breach fails.

S-TEC's position, however, hinges on an issue unresolved by the summary judgment evidence—S-TEC's reliance on the "Reprinted Purchase Order."  Goodyear faxed the "Reprinted Purchase Order" at Odom's request, and the cover letter, in capital letters, specifically called attention to the nature of the document:  "Following page is the REPRINTED purchase order . . . ."  The faxed "Reprinted Purchase Order" was printed on blank paper rather than on a purchase order form and was not signed.  Odom admitted he expected the original purchase order to follow in the mail, and, in fact, S-TEC did later receive the mailed original, directed to Odom's attention. The original purchase order bore an "Important Notice to Seller" in bold, capital letters:  "This purchase order is expressly made subject to, and your acceptance is strictly limited to, the terms and conditions stated herein, including the terms and conditions stated on the reverse side hereof."

Further, Goodyear sent S-TEC a similar purchase order to cover S-TEC's consultation fee. Thus, ample evidence exists to permit a jury to determine S-TEC knew or should have known about the warranty provisions in Goodyear's standard purchase order. *See Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 574-75 (6th Cir. 1999) (where the seller faxed one side of a purchase order but neglected to fax reverse side, whether the buyer knew or should have known of the limitations on the reverse side was a proper jury question).

### D. Sanctions

S-TEC finally complains the district court erred in denying its request to impose sanctions against Goodyear. We do not address this issue because S-TEC did not file a cross-appeal. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479-80 (1999) ("Absent a cross-appeal, an appellee . . . may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.") (quotation omitted); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004) (where appellee neglected to cross-appeal, the issue was not properly before the court).

### III.

Because material issues of fact surround both Brady's apparent authority to bind Goodyear and the warranty terms incorporated into the contract, we reverse the district court's judgment and remand for proceedings consistent with this opinion.