NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0358n.06
Filed: May 25, 2007

No. 06-2056

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

VENTURE GLOBAL ENGINEERING, LLC,

    Plaintiff-Appellant,

v.

SATYAM COMPUTER SERVICES, LTD.,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

                                /

BEFORE:    SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

    **CLAY, Circuit Judge.**  Plaintiff Venture Global Engineering, LLC ("VGE" or "Plaintiff") brings this action appealing the order of the district court to enforce in full an arbitration award ("the Award") in favor of Defendant Satyam Computer Services, Ltd. ("Satyam" or "Defendant"). The district court enforced the award pursuant to 9 U.S.C. § 207. For the reasons set forth below, we **AFFIRM** the order of the district court and **ENFORCE** the arbitration award.

## BACKGROUND

    Plaintiff is a company based in Fraser, Michigan, and Defendant is a global information and technology services company based in India. Plaintiff and Defendant entered into a joint venture agreement to form an Indian company called Satyam Venture Engineering Services Private Limited

("SVES"), which provided engineering and information technology services to the automotive industry. The parties executed a Shareholders Agreement ("the Agreement") on October 20, 1999, which provided that any disputes would be "submitted for final, binding arbitration to the London Court of Arbitration and that the agreement would be construed in accordance with Michigan law." (J.A. at 472). Under one of the terms of the Agreement, an "Event of Default" triggered an option for one party to purchase the other party's shares of SVES. (J.A. at 472). Events of Default, which are defined under §§ 8.01 and 8.03, included all bankruptcy events. This option had two terms. First, the option had to be exercised within 120 days of receipt of notice of the Event of Default and, second, it allowed the purchase of the defaulting party's shares for book value, whatever that may be at the time of the event.

On or about March 28, 2003, numerous corporate affiliates of VGE filed for bankruptcy. VGE did not provide Satyam with written notice of this action. When Satyam became aware of the bankruptcy filings, Satyam representative V. Murali contacted VGE and asked about the bankruptcy of these affiliates. Chuck Hunter of VGE responded with a short email denying that the affiliates were sufficiently tied to VGE to constitute a bankruptcy event. On February 8, 2005, Satyam became convinced that the bankruptcy of these affiliates did in fact constitute a bankruptcy event that triggered the option for Satyam to purchase VGE's shares of SVES. VGE responded that the 120-day time period had elapsed and thus Satyam had forfeited its right to exercise the option. Satyam claimed that because it never received written notice of the bankruptcy of the affiliates, the 120-day time period was never triggered.

On July 25, 2005, pursuant to the terms of the Agreement, Satyam requested an arbitration proceeding before the London Court of Arbitration. The arbitrator determined that, contrary to VGE's argument, the bankruptcy of VGE affiliates constituted an Event of Default and triggered the option. The arbitrator further found that because VGE failed to provide Satyam with written notice of the bankruptcy, the running of the time for the 120-day deadline never began. The arbitrator observed that Hunter's "laconic" email response on April 20, 2004 stating that VGE was not involved in the bankruptcy situation because it had "no ties" to the affiliates filing for bankruptcy did not constitute written notice of the bankruptcy event. Thus, the arbitrator gave Satyam the option of buying the shares for book value as calculated on February 8, 2005.

VGE filed an action in the district court contending that the Award should not be enforced because the arbitrator failed to apply Michigan law, which clearly holds that an "option is but an offer" and failure to exercise an option within the time allotted results in the forfeiture of that option. (J.A. at 477). The court held that this argument was merely an attempt to have the district court retry the merits of the case because the arbitrator did not fail to apply Michigan law; he merely found that the time period had not been triggered because VGE did not provide written notice of the Event of Default. The district court was also asked to consider whether enforcement of the Award would violate public policy as it would require the violation of Indian law. Plaintiff argued that Indian law required the fair market valuation of shares, which would render illegal an Award allowing the valuation of shares at book price when they are worth more. The district court concluded that this claim was meritless because the enforcement would only be illegal if the Reserve Bank of India (RBI) did not grant its permission for such a valuation, and Defendant presented uncontroverted

evidence that such permission had been granted. Finally, the district court addressed the issue of *forum non conveniens* and determined that Michigan was an appropriate forum because Plaintiff was unable to present any reason that India would be a "significantly preferable" venue to the United States. (J.A. at 485). Plaintiff argued that because enforcement of the Award would contravene Indian law, India had an interest in having this issue litigated in India. However, because the district court held that enforcement of the Award would not violate Indian law, this argument was ultimately fruitless. Thus, the district court refused to dismiss the claim. Plaintiff timely filed a notice to appeal.

## DISCUSSION

**I.    The district court properly refused to dismiss the claim for *forum non conveniens***

### A.    Standard of Review

In reviewing a district court's refusal to dismiss for *forum non conveniens*, we apply the deferential clear abuse of discretion standard. *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006).

### B.    Analysis

The doctrine of *forum non conveniens* provides that a district court "may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993). Thus, this doctrine may be invoked when the district court properly has jurisdiction over a claim and

4

constitutes an appropriate venue, but there exists another venue that is preferable. *See Duha*, 448 F.3d at 873.

Plaintiff urges us to decline jurisdiction under the doctrine of *forum non conveniens*. Plaintiff contends that this Court should refuse to exercise jurisdiction on the grounds that India is a more convenient forum. Defendant opposes this on two grounds. First, Defendant argues that the issue of *forum non conveniens* is moot. Just prior to oral argument, Defendant submitted to this Court the judgment of the High Court of Andhra Pradesh ("the High Court"), which dismissed Plaintiff's Indian lawsuit against Defendant. "A dismissal on forum non conveniens grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil [Corp. v. Gilbert]*, 330 U.S. [501] at 508-09, reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Id*. at 873. Accordingly, before this Court turns to the *Gulf Oil* factors, we must first consider whether an adequate alternative forum exists. Defendant argues that because the High Court dismissed Plaintiff's lawsuit, India is not an adequate alternative forum. However, the dismissal of Plaintiff's Indian suit does not indicate that Plaintiff would be unable to bring *this* suit in Indian courts. Normally, the adequate alternative forum requirement is satisfied by a showing that Defendant is "amenable to process" in the foreign jurisdiction. *Gulf Oil*, 330 U.S. at 506-07. Because Defendant is an Indian corporation, the dismissal of a related suit alone does not necessarily render India an inadequate alternative forum. Thus, we will turn to the *Gulf Oil* factors.

There are two categories of factors that must be considered: private and public. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Private factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. The public factors include "court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509).

We owe deference to the findings of the district court. *Duha*., 448 F.3d at 879-80. Because Plaintiff did not argue that it needed access to any witnesses or proof that would be found only in India, the district court did not spend time considering the private factors. Instead, the court turned to the "local interest in having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 509. The court pointed out that because it had already concluded that the public policy argument Plaintiff made claiming a violation of Indian law was meritless because no law had been violated, there was no Indian interest that rivaled the interest in having the case decided in Michigan because Plaintiff is "a Michigan limited liability company, the Award involves transfer of a Michigan company's assets, and the Award stems from agreements entered into in accordance with Michigan law." (J.A.

6

at 485). While it is true that SVES is an Indian company, the court held that this fact alone does not make India a significantly preferable venue.

Plaintiff now argues that it must call Indian governmental witnesses and other third-party witnesses, which makes India a significantly more convenient forum. However, this argument on appeal is the first mention of the need for such witnesses, and accordingly, we cannot consider this argument in the *Gulf Oil* balancing as it has been waived. *Blakely v. United States*, 276 F.3d 853, 865 n.2 (6th Cir. 2002). As explained below, we are not persuaded that this case requires the application of Indian law; the application of foreign law is also not a factor that weighs in Plaintiff's favor. Thus, we conclude that the district court did not abuse its discretion by refusing to dismiss this claim for *forum non conveniens*.

## II. The district court properly enforced the Award

### A. Standard of Review

This Court reviews a district court's enforcement of a foreign arbitration award for clear error with respect to its factual findings and *de novo* with respect to its legal conclusions. *Jacada (Europe), Ltd. v. Int'l. Mktg. Strategies, Inc.,* 401 F.3d 701, 712 (6th Cir. 2005).

### B. Analysis

The New York Convention ("the Convention") was drafted with the goal of encouraging "the recognition and enforcement of international arbitration awards and agreements." *Id*. It was implemented pursuant to 9 U.S.C. § 201 *et seq*. The Convention applies to an agreement when "the award was made in a country different than the country where enforcement is being sought, or the award is 'not considered as domestic' in the country where enforcement is being sought." *Id*. (citing

7

the Convention, art. I(1), 21 U.S.T. 2517, 2519. It is undisputed that the Agreement in the instant case is governed by the Convention.

Jurisdiction over the enforcement of awards that fall under the Convention is granted by 9 U.S.C. § 207. The district court may only deny enforcement for one of the reasons specified in the Convention. § 207. Those reasons are:

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c)The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain[s] decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> Furthermore, recognition and enforcement of an award may be refused if the subject matter of the conflict is not capable of settlement by arbitration in the country in which enforcement is sought, or if recognition and enforcement of the award would violate the public policy of that country.

*M & C Corp. v. Erwin Behr GMBH & CO., KG*, 87 F.3d 844, 848 (6th Cir. 1996) (quoting art. v (1)(a)-(e) and (2)(a)-(b)).

Plaintiff argues against the enforcement of the Award on two grounds: The arbitrator failed to apply Michigan law; and the enforcement of the award would violate public policy by violating Indian law, which fall under grounds (1)(d) and (2)(b) respectively.

### 1. Failure to apply Michigan law

Plaintiff contends that the "arbitral authority was not in accordance with the agreement of the parties" because the arbitrator failed to apply Michigan law. This defense is simply a guise to invite us to reconsider the merits of this case. The arbitrator did not rule in Defendant's favor because it failed to apply well-established Michigan law that time periods to exercise options are enforceable. It did so because it held that Plaintiff had not upheld its responsibility under the Agreement to provide written notice of the Event of Default. Thus, the time period had not been *triggered*. This does not go to the choice of law; it goes to the merits of the case. Plaintiff attempts to argue that the arbitrator found that it had provided written notice to Defendant in an April 20, 2004 email. However, that is not quite true. In fact, the arbitrator found that Plaintiff responded to an email from Defendant *denying* that the bankruptcy of affiliates were "tied" to Plaintiff. (J.A. at 41). This email was not considered adequate written notice and should not be; it did not set forth the essential point that Plaintiff was involved in an Event of Default. Thus, the issue Plaintiff attempts to have us consider is not a claim of procedural aberration because the arbitrator failed to apply the correct law. It is a claim that the arbitrator incorrectly held that there was no written notice and that we should substitute our judgment for that of the arbitrator. This is not a cognizable defense under the Convention; thus, we will not overturn the enforcement of the Award on this ground.

### 2. Enforcement would violate Indian law

Plaintiff additionally urges us not to enforce the Award on the grounds that doing so would violate Indian law, and thus, enforcement runs counter to public policy. It is well-settled that in the interest of international comity, this Court should not enforce an award in a country that would result in the violation of the law of that country. *United States v. Ross*, 302 F.2d 831, 834 (2d Cir. 1962) ("[N]o court should order the performance of an act in a foreign country when that act will violate the foreign country's laws."). This is a recognized public policy concern. *Id.*; *see also, Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). Thus, a showing that the enforcement of the Award would violate Indian law may well present a cognizable defense under the Convention.

The district court did not decline to overturn the Award because it found the public policy concern to be unpersuasive. As the district court pointed out, the facts indicate that Indian law would actually not be violated by the enforcement of the Award. Indian law would only be violated by the enforcement of the Award in the absence of evidence of the RBI's consent. Because Defendant submitted uncontroverted evidence that the RBI had provided its consent, the record indicated that Indian law would not be violated by enforcement of the Award. Specifically, Defendant submitted documents proving this consent and the statements of Murali, who testified that such consent had been obtained. Plaintiff responds that the district court improperly admitted the evidence submitted by Defendant that showed the RBI had given its consent to the enforcement of the Award. Plaintiff argued that the documents did not comport with Federal Rules of Evidence 902(3) and 902(12) as they were not properly certified by Indian officials. Additionally, Plaintiff argues that Murali's declarations should have been excluded pursuant to Federal Rule of Evidence 602 because it was

never established that Murali had any personal knowledge of the alleged transaction. The district court admitted the documents over Plaintiff's objections.

This Court reviews evidentiary decisions for abuse of discretion. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). In the present case, Plaintiff fails entirely to cite the district court opinion to argue precisely what is wrong with its reasoning that these documents were admissible. Instead, it addresses this argument by listing the evidence it thought should have been excluded and providing brief discussions of the law concerning the evidentiary rules without applying that law to the facts of this case. In other words, Plaintiff's argument is devoid of any citations to the record that indicate to this Court what was deficient about the colloquy that took place prior to the admission of the evidence. Finding nothing within the district court's holding that indicates it abused its discretion in admitting the documents pertaining to the obtaining of the RBI's consent, we affirm the district court holding.

**III.    Plaintiff's claims are not frivolous and sanctions are not appropriate**

    **A.    Analysis**

"An appeal is frivolous if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." *Dallo v. Immigration & Naturalization Service*, 765 F.2d 581, 589 (6th Cir. 1985). Accordingly, we will not declare a claim frivolous merely because it is meritless. Its lack of merit must be obvious and there must be some evidence of an improper purpose in the decision to bring the suit. Here, Defendant alleges no improper purpose and we are not convinced that one exists. Plaintiff certainly zealously pursues its arguments and arguably

misstates the law and record in some instances, but not much so as to suggest that Plaintiff's motives were improper. We therefore decline to issue sanctions against Plaintiff. .

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the order of the district court and **ENFORCE** the Award in full; we decline to issue sanctions against Plaintiff.