File Name: 09a0273n.06

**Filed: April 9, 2009**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Nos. 07-2007/08-1088**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SATYAM COMPUTER SERVICES, LTD., | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| VENTURE GLOBAL ENGINEERING, LLC, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Before: RYAN, GIBBONS, and SUTTON, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Respondent-appellant Venture Global Engineering, LLC ("VGE") appeals the district court's denial of its motion to vacate judgment pursuant to Federal Rules of Civil Procedure ("FRCP") 60(b)(2) and 60(b)(3) and the district court's order holding VGE in civil contempt. VGE sought to vacate the decision of the district court granting a petition by petitioner-appellee Satyam Computer Services, Ltd. ("Satyam") for recognition and enforcement of an arbitration award entered by the London Court of International Arbitration ("LCIA") for Satyam. Satyam filed its action to enforce the arbitration award in the United States District Court for the Eastern District of Michigan, and the district court granted Satyam's motion recognizing and enforcing the arbitration award on July 31, 2006. VGE's failure to comply with the

1

terms of that judgment led to the district court's holding VGE in contempt on January 21, 2008.

Because the district court did not abuse its discretion in denying VGE's motion to vacate judgment

and in holding VGE in contempt, we affirm.

I.

VGE is a Michigan limited-liability company that entered into a joint venture called Satyam

Venture Engineering Services, Ltd. ("SVES") with Satyam, an Indian corporation. The district court

described the underlying dispute between the two companies as follows:

> As part of their joint venture, the parties executed a Shareholders Agreement on October 20, 1999, which provided that any disputes would be "submitted for final, binding arbitration to the London Court of Arbitration" and that the agreement would be construed in accordance with Michigan law. Section 8.03 of the Shareholders Agreement required the option to be exercised "within one hundred twenty (120) days after receipt of notice of the Bankruptcy Event from the Bankrupt Shareholder" and specified that the option price would be the "book value" of the shares. Following a dispute between the parties, on or about July 25, 2005, Satyam requested an arbitration proceeding before the London Court of International Arbitration. The arbitrator determined that a Bankruptcy Event had occurred, which had triggered an option under the Shareholders Agreement for Satyam to purchase VGE's shares of SVES at their book value, although the arbitrator explicitly stated that the stock "is clearly worth much more than the book value." The arbitrator concluded that although "Satyam exercised its option to buy VGE's Satyam shares nearly two years after the first Bankruptcy Event, . . . VGE's decision not to give Satyam written notice of the Bankruptcy Event in accordance with Section 8.03 of the Shareholders Agreement gave Satyam the leisure to take its time in exercising its purchase option.
>
> The arbitrator entered the award on April 3, 2006, requiring VGE to deliver to Satyam share certificates in a "form suitable for immediate transfer to Satyam or its designee" and to "do all that may otherwise be necessary to effect the transfer of such ownership to Satyam or its designee." The arbitrator also required Satyam to pay US $622,656 to VGE concurrently with the transfer of ownership, such sum being the "net difference between the amount payable by Satyam to VGE for the book value of the shares of SVES (plus interest) and the amount payable by VGE to Satyam for the disgorgement of royalties paid to VGE by Satyam (plus interest)." The Award also provided that VGE pay to Satyam the following: the costs of the arbitration, £48,777.48; Satyam's additional costs, US $1,488,454.11; and five percent annual

2

interest compounded annually on the unpaid balance of the awarded sums until payment has been made. Finally, the Award released Satyam from its obligations under a Non-compete Agreement with VGE.

*Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, No. 06-CV-50351-DT, slip op. at 2-3 (E.D. Mich. July 13, 2006). Satyam filed a Petition for Recognition and Enforcement of the Arbitration Award on April 14, 2006, in the United States District Court for the Eastern District of Michigan, and VGE filed a Response and a Cross-Petition to Refuse and Deny Recognition and Enforcement on April 28, 2006. On that same day, VGE filed suit against Satyam in India in the Secunderabad City Civil Court (the "Civil Court"). VGE sought a declaration from the Indian courts that the arbitration award was invalid, an order vacating the award, and an injunction prohibiting the transfer of VGE's SVES shares to Satyam. VGE obtained a temporary injunction from the Indian courts on June 15, 2006, maintaining the status quo and preventing the transfer of VGE's SVES shares to Satyam. VGE also sought to hold Satyam in contempt in the Indian courts on the basis that Satyam's actions in continuing proceedings in the United States to enforce the arbitration award constituted contempt of the Indian court's order that the parties maintain the status quo with respect to the SVES shares while the Indian litigation proceeded. The High Court of Andhra Pradesh rejected VGE's contempt motion on November 29, 2006. The Civil Court in India issued an oral ruling vacating the temporary injunction on December 28, 2006, and issued its written decision denying VGE's contempt action and vacating the temporary injunction on January 25, 2007.

On July 31, 2006, the district court granted Satyam's petition to enforce the arbitration award and issued a judgment ordering VGE to "deliver to Satyam . . . [VGE's SVES] share certificates in a form suitable for immediate transfer to Satyam" and to "do all that may otherwise be necessary to

3

effect the transfer of its ownership interest in SVES to Satyam" upon concurrent payment of $622,656 from Satyam to VGE. A prior panel of this court affirmed the order of the district court enforcing the arbitration award on May 25, 2007. *Venture Global Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 233 F. App'x 517 (6th Cir. 2007) ("*Venture I*").

After the district court granted Satyam's petition to enforce the arbitration award, VGE filed a motion for a stay pending its appeal to this court on August 2, 2006. The district court granted the stay in part with respect to the monetary obligations of the parties but denied a stay as to the specific performance required of the parties. The district court ordered VGE to deliver its share certificates in SVES to Satyam for concurrent payment by Satyam of $622,656 within fourteen days of September 5, 2006. The Sixth Circuit also denied VGE's motion for a stay pending appeal, finding that VGE had failed to demonstrate sufficient likelihood of success on the merits. VGE did not fulfill its obligation to deliver the share certificates to Satyam within fourteen days, and Satyam filed a motion for an order of civil contempt against VGE on February 6, 2007. Although there had been temporary injunctions in the Indian courts prohibiting transfer of the SVES shares in place during most of the fall of 2006, there were no such temporary injunctions in place on February 6 when Satyam filed its motion for contempt.

VGE opposed Satyam's motion for an order of civil contempt, claiming on February 20, 2007, that it had been making a good faith effort to take the steps necessary to transfer the SVES stock without violating Indian law. Satyam contested whether VGE's actions had been necessary in order to comply with Indian law and accused VGE of providing the district court with "misstatements and half-truths" about Indian law and the facts of this case. Meanwhile, in May

4

2007, VGE filed an appeal in its Indian litigation with the Indian Supreme Court and asked for another temporary injunction restricting the transfer of the SVES shares while the appeal was pending. The Indian Supreme Court issued a status quo injunction on May 15, 2007. On January 10, 2008, the Indian Supreme Court reversed the High Court of Andhra Pradesh, finding that Indian courts did possess jurisdiction to hear VGE's challenge to the arbitration award, and remanded the case for further proceedings.

The district court appointed a special master to assist it in resolving Satyam's contempt motion, given the "complexity of the issues involved in this dispute, and the significant time the court would need to invest to research and apply Indian law." *See* Fed. R. Civ. P. 53(a)(1). The district court specifically noted that it was *not* referring the matter to the special master to interpret the court's "order to transfer VGE's SVES shares to Satyam, but to evaluate VGE's claim that its failure to do so as of this date is due to procedural hurdles under Indian law and that VGE has taken all reasonable steps within its power to comply with the court's order." The district court appointed Professor Vikramaditya S. Khanna as a special master in Indian law on June 21, 2007, and empowered Khanna to submit a report and recommendation regarding a proposed resolution of Satyam's motion for an order of civil contempt. The district court also overruled VGE's objections to Khanna's appointment and his mandate on the same date.

On July 18, 2007, the day before the hearing conducted by Khanna was scheduled to take place, VGE filed a motion to vacate the judgment against it as well as the order appointing Khanna as a special master based "on the grounds of newly discovered evidence and the misrepresentation, fraud and misconduct" of Satyam pursuant to Federal Rules of Civil Procedure 60(b)(2) and

60(b)(3). VGE also moved for an order denying Satyam's motion for contempt and moved for an expedited hearing on all of the motions since "the hearing before the court-appointed Special Master is scheduled to begin tomorrow, July 19, 2007, at 9:00am."

The district court denied VGE's motions on the following day, July 19, noting that VGE filed the motions "[l]iterally on the eve of today's hearing before the special master, and after the court denied [VGE's] motions to dismiss and for adjournment." VGE argued that a May 28, 2007, letter from Citibank, Satyam's authorized agent, stating that it would not remit the funds necessary to fulfill Satyam's obligations under the district court's order unless it was reassured by Indian authorities that the transfer was legally permissible constituted clear and convincing evidence that the Reserve Bank of India ("RBI") had not approved the transfer of SVES shares for a cash payment. VGE thus argued that it was entitled to relief under FRCP 60(b)(2) and (b)(3) because of Satyam's fraud and/or misconduct in withholding this letter. The district court disagreed, finding that the new letter did "not negate the fact that both Citibank and the RBI had approved the transfer as of May 2006." The district court held that "[a]t most, the present letters demonstrate that, due to VGE's efforts to appeal adverse decisions and obtain stays of the transfer in India, the RBI and Citibank, in an abundance of caution, *now* wish to await the resolution of Indian court proceedings." Finally, the district court cautioned VGE that it should not attempt to use Indian court stays that VGE itself sought in order to claim that it is unable to comply with the court's order to transfer the SVES shares. The district court concluded that to "say otherwise would be to approve VGE lifting itself by its own bootstraps."

That same day, July 19, 2007, special master Khanna began a two-day hearing on the

6

contempt motion. Khanna ultimately issued a report on September 12, 2007, concluding that VGE had failed to do "everything in its power" to effectuate the transfer of the SVES shares to Satyam as required by the district court's order. VGE had attempted to discharge its duty under the district court's judgment to transfer the SVES shares *to Satyam* by instead transferring the shares *to SVES itself*. Khanna decided that VGE's failure to satisfy the requirements of the order was not because of impediments under Indian law and that VGE's actions were responsible for the failure of the SVES board to record Satyam as the new owner of the shares. Khanna recommended that VGE should be held in contempt of the district court's orders, that VGE should be ordered "to immediately and fully comply" with the orders by delivering its SVES shares to Satyam, that VGE should request in writing that the Indian Supreme Court remove its status quo order preventing the transfer of the shares, and that VGE should take "any additional steps necessary to effect the transfer of both legal and beneficial interests in the SVES shares to Satyam." In order to ensure rapid compliance, Khanna recommended that the district court order VGE to pay a daily fine of $10,000, or an escalating daily fine, until it fully complied with the court's orders. VGE objected to the Special Master's finding of contempt on September 21, 2007, arguing that the Special Master ignored the appropriate standards and burdens for the contempt proceeding, erred in certain of his specific findings, and recommended sanctions that were unsupported by the evidence and applicable law.

On January 17, 2008, the district court adopted the report and recommendations of Special Master Khanna in full, denied VGE's objections, and granted Satyam's motion for contempt. The district court rejected VGE's argument that it had substantially complied with the district court's

7

orders and ordered strict compliance with the following course of action: VGE must request in writing that the Indian Supreme Court remove its status quo order; dismiss its board members of SVES and replace them with board members of Satyam's choice; take any additional steps necessary to transfer its SVES shares to Satyam; and file affidavits attesting to its compliance with these requirements. Unless VGE strictly complied with these orders, the district court would impose a civil fine of $10,000 per day, escalating to $25,000 per day after one week. If VGE failed to comply after two weeks, then Satyam was directed "to petition the court for an order that will require Larry Winget [the owner of VGE through his living trust] to show cause why he should not be held personally in contempt and incarcerated pending compliance" with the district court's orders. VGE timely appealed the orders finding VGE in contempt and denying its motions to vacate the judgment pursuant to FRCP 60(b)(2) and 60(b)(3).

## II.

"We review a district court's denial of a Rule 60(b) motion for an abuse of discretion." *Futernick v. Sumpter Twp.*, 207 F.3d 305, 313 (6th Cir. 2000). A district court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous factual findings. *See United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006). "In reviewing an order denying Rule 60(b) relief, we have no occasion to review the underlying judgment . . . . Instead, we merely inquire as to whether one of the specified circumstances exists in which [the appellant] is entitled to reopen the merits of his underlying claims." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998) (citation omitted).

FRCP 60(b)(2) states that a party may move for relief from a final judgment, order, or

8

proceeding on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" FRCP 60(b)(3) allows a party relief from a final judgment based upon "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks and citation omitted). Therefore, "the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). In order to succeed on a Rule 60(b)(2) motion, "a movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (internal citation and quotation omitted) (alteration in original).

In order to meet its burden, VGE points to certain letters dated from April to July of 2007 between Satyam, Citibank and the RBI as "newly discovered evidence," purportedly showing that Satyam's representation that the RBI had unconditionally approved the transfer of VGE's SVES shares was actually a conditional approval. VGE claims that the RBI's approval was conditioned upon Citibank's affirmation of the "bona fides" of the case, and this condition never occurred. As a threshold matter, it is well-settled that "newly discovered evidence for motions under . . . Rule 60(b)(2) must pertain to evidence which [sic] existed at the time of trial." *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 136 (6th Cir. 1990). The earliest letter that VGE references did not exist

9

until April 2007, more than eight months after the judgment was entered on July 31, 2006. Therefore, VGE's Rule 60(b)(2) motion fails as a matter of law to the extent it relies upon the April to July 2007 letters because this "newly discovered evidence" did not exist at the time of trial.

VGE also asserts that these letters entitle it to relief under Rule 60(b)(3) because they show Satyam's fraud, misrepresentation, or misconduct during the trial. Satyam's brief points out the absurdity of the proposition that evidence that did not exist until several months after the judgment could indicate that Satyam engaged in fraud, misrepresentation, or misconduct before the judgment. VGE's reply brief responds that it "does not assert that the letters of May 28 and July 4 are *the* newly discovered evidence under Rule 60(b)(2) or that Satyam's failure to disclose the letters themselves are *the* Rule 60(b)(3) bad acts." Reply Br. at 12 (emphasis in original). Rather, VGE asserts that the letters reflect regulatory impediments that existed prior to the judgment on July 31, 2006, that could not have been known to VGE and were wrongfully concealed by Satyam.

In order to evaluate VGE's argument, this court must examine the content and context of the letters and the Indian regulatory approval of the transaction in greater detail. In its Cross-Petition to Refuse and Deny Recognition and Enforcement of [the Arbitration] Award filed in the district court on April 28, 2006, VGE argued that it could not transfer its stock to Satyam without the approval of the RBI, in accordance with India's Foreign Exchange Management Act ("FEMA"). Satyam contested whether RBI approval was necessary, but nevertheless sought approval from the RBI and submitted three letters as evidence of such approval. The first letter was from Citibank to the RBI on May 2, 2006, requesting approval for the transaction. The RBI replied to Citibank on May 22, 2006, stating that "remittance can be made . . . in accordance with the Arbitration award

10

given by the London Court of International Arbitration provided you are satisfied with the bona fides of the case." Citibank then wrote a letter to Satyam on the same day, May 22, 2006, stating that "the Reserve Bank of India has considered the case and has given its permission to route the payment under . . . FEMA." The district court considered this evidence in its judgment and found that "the approval granted by the RBI authorizes the transfer to take place at the price determined in the Award, rendering moot VGE's argument that enforcing the Award would result in a violation of Indian law." Upon VGE's appeal, this court concurred, finding that Satyam "submitted uncontroverted evidence that the RBI had provided its consent, [and that] the record indicated that Indian law would not be violated by enforcement of the Award." *Venture I*, 233 F. App'x at 523.

On February 7, 2007, VGE's Indian attorneys at Tuli & Co. sent a letter to the RBI, purportedly seeking clarification regarding the RBI's approval of the transaction. In fact, VGE stated that "Citibank had not presented an accurate and complete picture" in its correspondence with the RBI and went on to describe the American and Indian litigation between VGE and Satyam. VGE claimed that "Citibank was asked by the RBI to satisfy itself . . . as to the 'bona fides of the case'. . . . [but] did not set out what steps it had taken as regards the bona fides of the case." VGE thus asked the RBI to consider what steps VGE should take to comply with Indian law and regulations regarding the transfer of SVES shares. Tuli & Co. sent additional letters to the RBI on March 7, 2007, and April 5, 2007, informing the RBI of the status quo injunction put in place by the Indian courts and reiterating its view that the Citibank correspondence with the RBI presented "an incomplete presentation of facts." On May 28, 2007, Citibank sent a letter to RBI stating that Citibank would await the final orders from the Indian Supreme Court but "request[ing] that RBI re-

11

affirm that, subject to there not being any judicial restriction, we may act, in good faith and with reasonable diligence . . . and remit the amount, as and when requested by Satyam." The RBI's response stated that "[i]n this connection, you are requested to maintain status quo and wait for the final orders of the Hon'ble Supreme Court in the matter."

VGE claimed that the new letters between Citibank and the RBI constituted clear and convincing evidence that the RBI had not approved the transfer and that it was not legal for VGE to transfer the shares under Indian law and sought to vacate the judgment on that ground. The district court disagreed, finding that the new letters did not change the fact that the RBI and Citibank had approved the transaction at the time of the judgment, based upon their letters from May 2006. The district court found that "[a]t most, the present letters demonstrate that, due to VGE's efforts to appeal adverse decisions and obtain stays of the transfer in India, the RBI and Citibank, in an abundance of caution, *now* wish to await the resolution of Indian court proceedings." The district court also noted that to the extent Citibank had a concern about the transfer of SVES shares, the concern seemed limited to the fact that VGE had obtained status quo injunctions from the Indian courts. "The court has previously cautioned VGE that it may not attempt to use the stays that VGE itself sought in India to claim that VGE is now unable to comply with the court's order. . . . To say otherwise would be to approve VGE lifting itself by its own bootstraps."

We find that the district court did not abuse its discretion in finding that VGE did not meet its burden to present newly discovered evidence entitling VGE to relief from the judgment under Rule 60(b)(2). As previously noted, VGE cannot point to the 2007 letters as "newly discovered evidence" warranting vacatur of the judgment since they were written after the judgment was

12

imposed in this case. *See Davis*, 912 F.2d at 136. VGE's argument that the letters are merely evidence of the regulatory impediments that are the true "newly discovered evidence" is unconvincing. VGE is unable to refute the RBI's and Citibank's approval of the transfer of VGE's SVES shares, as evidenced by their letters providing such approval in May 2006. The evidence shows that any later uncertainty regarding the transfer of the shares resulted from VGE's meddling in the matter.

Nor did the district court abuse its discretion in finding that VGE had not met its burden to show Satyam's fraud, misrepresentation, or misconduct by clear and convincing evidence under Rule 60(b)(3). For the purpose of a Rule 60(b)(3) motion, fraud is defined as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Info-Hold*, 538 F.3d at 456 (citations omitted). "'Misrepresentation' can be interpreted as an affirmative misstatement. . . . And 'other misconduct' can be interpreted to reach questionable behavior affecting the fairness of litigation other than statements or the failure to make statements." *Jordan v. Paccar*, No. 95-3478, 1996 WL 528950, at *6 (6th Cir. Sept. 17, 1996) (citation omitted). VGE quibbles with the wording of the May 22, 2006, letter from the RBI to Citibank, stating that the RBI required Citibank affirmatively to act to "satisfy itself with the bona fides of the case" before it would approve the share transfer. In fact, the context of the letter makes clear that the RBI was approving the transaction and that no further affirmative action was needed from Citibank.

Nor do the April to July 2007 letters between Citibank and the RBI demonstrate any fraud, misrepresentation, or misconduct on Satyam's part. Citibank's letter specifically stated that it

13

wished to *re-affirm* the RBI's approval for the transaction, indicating that it had already received the RBI's approval. The RBI's response that the parties should maintain the status quo until the Indian Supreme Court ruled on the matter was most likely based on the status quo injunctions that VGE obtained from the Indian courts. VGE has not pointed to any evidence suggesting that these letters were written because of Satyam's fraud, misrepresentation, or misconduct, let alone clear and convincing evidence. We conclude that the district court did not abuse its discretion in holding that VGE did not meet its burden of showing Satyam's fraud, misrepresentation, or misconduct by clear and convincing evidence; and VGE was therefore not entitled to vacatur of the judgment.

### III.

### A.

We review the district court's finding of contempt for an abuse of discretion. *See Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). This court typically defers to a district court's interpretation of its order and reviews for abuse of discretion because the district court "is obviously in the best position to interpret its own order." *Zevitz v. Zevitz* (*In re Zevitz*), No. 99-2400, 2000 U.S. App. LEXIS 25283, at *4 (6th Cir. Sept. 28, 2000); *see also Kendrick v. Bland*, 931 F.2d 421, 423 (6th Cir. 1991). The district court's factual findings supporting the contempt order are reviewed under a clearly erroneous standard. *See Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550-51 (6th Cir. 2006). The district court's determination of the applicable burdens of proof is an issue of law reviewed *de novo*. *See Fuji Kogyo, Ltd. v. Pacific Bay Int'l Inc.*, 461 F.3d 675, 681 (6th Cir. 2006).

VGE does not dispute that it failed to deliver its SVES share certificates to Satyam. Rather,

14

it claims that its delivery of the share certificates to SVES, rather than to Satyam, complied with Section 108 of the Indian Companies Act and "substantially complied" with the district court's order to deliver the shares to Satyam. VGE points to *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989), as the source of the "substantial compliance" test, but *Peppers* makes clear that the standard is "whether the defendants took all reasonable steps within their power to comply with the court's order" and found in that case the defendants had taken all reasonable steps to substantially comply with the judgment. *Id.* at 969. More recent Sixth Circuit authority confirms that the standard is "whether the defendant took all reasonable steps within [its] power to comply with the court's order." *Elec. Workers Pension Trust Fund*, 340 F.3d at 379 (quoting *Peppers*, 873 F.2d at 969).

We find that the district court did not abuse its discretion in adopting the Special Master's finding that VGE had not taken all reasonable steps in its power to comply with the district court's order to deliver its SVES shares to Satyam. VGE may be correct that delivery of the shares to SVES itself satisfied Indian law, but that is irrelevant to the point at issue here; namely, whether it satisfied *the district court's judgment*. The judgment clearly stated that "VGE shall deliver to Satyam . . . share certificates in a form suitable for immediate transfer to Satyam evidencing VGE's ownership interest in [SVES]." VGE did not deliver the share certificates to Satyam but to SVES, meaning that it clearly failed to comply with the district court's order. The Special Master found that VGE's failure to comply was not because of Indian legal impediments, and VGE has not presented clear and convincing evidence that the Special Master erred in such a finding. VGE's course of conduct throughout this litigation, both when Indian temporary injunctions were in place and when they were not, has demonstrated willfulness in violating the district court's order to transfer the SVES shares

15

to Satyam. Therefore, the district court did not abuse its discretion in finding VGE in contempt for failing to comply with its clear directive.

## B.

VGE next argues that the district court abused its discretion in finding VGE in contempt because the district court's order that VGE "do all that may otherwise be necessary to effect the transfer of its ownership interest in SVES to Satyam" is too indefinite for VGE to comply with it. The district court did not make a specific finding that VGE was in contempt of the particular provision listed above but rather stated generally that "VGE is held in contempt of court for its violations of the court's orders." However, the district court adopted the findings of the Special Master that VGE had not done "all that may otherwise be necessary to effect the transfer" of its SVES because it 1) sent the RBI misleading information in an attempt to persuade the RBI to withdraw its approval of the transaction, 2) delivered the shares to SVES instead of Satyam, thus depriving Satyam of beneficial ownership of the shares, and 3) failed to appear at Indian court proceedings in order to delay the proceedings.

As a threshold matter, VGE is estopped from asserting ambiguity as a defense to the contempt judgment because it did not at any time seek clarification of the court's order. In *Glover v. Johnson*, 934 F.2d 703, 708-09 (6th Cir. 1991), the defendants operated for ten years under a negotiated settlement between the parties. When the defendants then claimed that the language of the final order was ambiguous, this court held that the "defendants' failure to request the court to clarify, explain, or modify the language in the decade since the order was served precludes raising an ambiguity argument at this time." *Id.* VGE attempts to distinguish *Glover*, and it is true that the

16

ten-year delay in *Glover* is longer than the litigation period at issue here. Regardless, VGE has had more than a year-and-a-half to seek clarification of the district court's order and yet failed to do so. *See also Negron-Almeda v. Santiago*, 528 F.3d 15, 24 (1st Cir. 2008) ("[T]o the extent that there was any room for doubt that the 2004 order meant exactly what it said, it was the burden of the doubters (here, the plaintiffs) to ask the district court in a timely fashion to clarify the scope of the order. The plaintiffs failed to do so – and that failure estops them from now alleging the existence of a hidden ambiguity.") (citation omitted).

Even if VGE were not estopped from asserting ambiguity as a defense to the contempt judgment, the district court's orders were sufficiently definite and specific when read in their entirety, and the district court did not abuse its discretion in finding VGE in contempt of those orders. The judgment required: "(i) . . . VGE [to] deliver to Satyam . . . share certificates in a form suitable for immediate transfer to Satyam evidencing VGE's ownership interest in [SVES], the parties' joint venture company; (ii) VGE [to] do all that may otherwise be necessary to effect the transfer of its ownership interest in SVES to Satyam." The district court acknowledged that "subsection (ii) of the court's order may be ambiguous when read in the abstract" but held that "in this context it provided VGE with sufficiently direct and specific directions." We agree that the judgment was sufficiently clear. In context, section (ii) was a requirement that VGE refrain from obstructing the process of transferring ownership of the SVES shares from VGE to Satyam. Indeed, given VGE's numerous actions aimed at thwarting the effect of the judgment, including seeking to have the RBI withdraw its approval from the transaction and seeking status quo injunctions from the Indian courts, the district court was well-advised to include a broader statement of what it required

17

from VGE.

C.

VGE's next argument is that the district court abused its discretion by adopting the Special Master's finding that "VGE ultimately blocked any possibility of an expeditious transfer by seeking and obtaining" Indian status quo injunctions. VGE contends that the district court's order requiring VGE to request (i) that the Indian Supreme Court remove its status quo injunction and (ii) that Citibank transfer the purchase price for the transfer of shares without a finding by an Indian court that the transfer complies with FEMA was an abuse of discretion because it constituted an unlawful antisuit injunction under *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349 (6th Cir. 1992).

"In *Gau Shan*, we observed that while it is 'well settled that American courts have the power' to issue foreign antisuit injunctions, '[c]omity dictates that [these injunctions] be issued sparingly and only in the rarest of cases." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, Nos. 08-6014/6032, 2009 U.S. App. LEXIS 2743, at *29-30 (6th Cir. Feb. 13, 2009) (quoting *Gau Shan*, 956 F.2d at 1353-54) (alteration in original). An antisuit injunction "enjoin[s] parties subject to [the district court's] jurisdiction from pursuing parallel *in personam* litigation before foreign tribunals." *Kirby PTY, Ltd. v. Norfolk Southern Ry. Co.*, 71 F. Supp. 2d 1363, 1366 (N.D. Ga. 1999), *rev'd on other grounds*, 300 F.3d 1300 (11th Cir. 2002). VGE is incorrect in claiming that the district court's order operates effectively as an antisuit injunction, because VGE remains free to pursue its claims before the Indian courts. Indeed, the record reflects that the Indian litigation continues to this day, and the district court's order did not require VGE to discontinue the litigation. Although VGE cannot avoid transferring its SVES shares to Satyam, the Indian courts are free to

18

fashion an appropriate remedy as they see fit if VGE prevails in its Indian litigation.

IV.

VGE next argues that the district court erred as a matter of law by denying VGE procedural protections during the contempt proceedings in violation of *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994). *Bagwell* involved a labor dispute in which the state court found that a union committed both violent and nonviolent breaches of a civil injunction and fined the union over $64 million. The trial court had conducted seven separate contempt hearings, all as civil proceedings before a trial judge without a jury. *Id.* at 824. The Supreme Court concluded that civil procedural protections were inadequate for a subset of indirect contempts more appropriately considered criminal contempt "involving out-of-court disobedience to complex injunctions often requir[ing] elaborate and reliable factfinding." *Id.* at 833-34 (citation omitted). However, it reaffirmed that "indirect contempts involving discrete, readily ascertainable acts, such as *turning over a key or payment of a judgment*, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." *Id.* at 833 (emphasis added).

Despite VGE's assertions that the judgment here was "complex" and thus warranted the criminal protections of a jury trial, the district court's order was simple: to transfer the SVES shares to Satyam. This is more akin to "turning over a key" than to obeying a complex set of injunctions, as VGE only had to take the affirmative step of transferring its SVES shares to Satyam in order to comply with the judgment. *Cf. id.* at 833. Any complexity arose only from VGE's asserted defense that it was unable to comply with the order because of Indian legal impediments, which the Special Master found to be false. VGE is unable to show that the contempt order was not civil in nature.

19

VGE received all of the process due in a civil contempt proceeding: notice, an impartial hearing, and an opportunity to present its case. *See NRLB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 589 (6th Cir. 1987).

Nor did the district court err in imposing and applying the burden of proof. "To hold a litigant in contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *S. Elec. Ret. Fund v. Gibson*, No. 3:04-0022, 2006 U.S. Dist. LEXIS 61253, at *10 (M.D. Tenn. Aug. 28, 2006) (citing *Elec. Workers Pension Trust Fund*, 340 F.3d at 379). VGE asserts that the district court erred in not placing this burden on Satyam; but to the contrary, the district court did place the burden on Satyam and found that it had met its burden: "Because it is undisputed that Satyam does not currently have in its possession VGE's SVES stock, the court is inclined to find that Satyam has produced clear and convincing evidence that VGE has violated the court's orders requiring such a transfer." *Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, No. 06-CV-50351-DT, slip op. at 10 (E.D. Mich. June 21, 2007). "Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Elec. Workers Pension Trust Fund*, 340 F.3d at 379 (emphasis in original). While VGE attempted to meet its burden by showing that Indian law prevented the transfer of VGE's SVES stock, this assertion was rejected by the Special Master and the district court. VGE was unable to meet its burden and was thus properly held in contempt. We find that the district court did not err in applying the burden-shifting process applicable in civil contempt

20

proceedings.

V.

For the foregoing reasons, we affirm the district court's denial of VGE's motion to vacate the prior judgment pursuant to FRCP 60(b)(2) and 60(b)(3) as well as the district court's grant of Satyam's motion to hold VGE in contempt.