West SHELL, Jr.; and Andrew C. Hauck, III, Plaintiffs–Appellants,

Herbert A. Middendorff, Plaintiff,

v.

R.W. STURGE, LTD.; the Council of Lloyd's; the Society of Lloyd's; and the Corporation of Lloyd's, Defendants–Appellees.

No. 94–3119.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1995.

Decided June 8, 1995.

John L. Campbell (argued and briefed), Kohnen, Patton & Hunt and Virginia C. Whitman, White, Getgey & Meyer, Cincinnati, OH, for plaintiffs-appellants.

Charles J. Faruki (argued and briefed), Faruki, Gilliam & Ireland, Dayton, OH, for defendants-appellants.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; HILLMAN, District Judge.*

KENNEDY, Circuit Judge.

Plaintiffs, investors in the Society of Lloyd's, brought this diversity action against defendants R.W. Sturge, Ltd., the Society of Lloyd's, the Council of Lloyd's and the Corporation of Lloyd's seeking to rescind their investment contracts under Ohio securities law. Defendants filed a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure on the grounds that forum selection clauses in the investment contracts gave exclusive jurisdiction to the English courts. The District Court granted the motion to dismiss and plaintiffs now appeal, arguing that the forum selection clauses deprive them of their substantive rights under the Ohio securities laws and that Ohio public policy outweighs the policies served by enforcing the forum selection clauses. For the following reasons, we affirm.

## I.

The Society of Lloyd's, or Lloyd's of London ("Lloyd's"), is not an insurance company, but rather is an insurance marketplace in which individual Underwriting Members, or Names, join together in syndicates to underwrite a particular type of business. The Corporation of Lloyd's ("Corporation"), which was created by an Act of Parliament, regulates the Lloyd's insurance market. The Corporation itself does not underwrite any insurance, but provides facilities and services to assist underwriters. The Corporation is managed by the Council of Lloyd's ("Council") which controls the admission and discipline of Names, sets the Names' reserve requirements and establishes standards for Lloyd's policies.

To become a Name, one must apply and be sponsored by an existing member. Applicants must pass a means test to determine that they possess sufficient assets to satisfy claims. Those accepted as Names are required to obtain a letter of credit in favor of Lloyd's to serve as a security. The amount of the letter of credit, as well as a Name's means, determines the premium limit for each Name.

A Name cannot conduct insurance business directly, but instead enters into an Agency Agreement with a Members' Agent who acts on the Name's behalf. Names typically belong to several syndicates in order to spread their risks and the Members' Agents assist the Names in selecting the syndicates to join. Each Name is responsible for his or her proportionate share of a syndicate's losses up to his or her entire net worth.

Plaintiffs Andrew Hauck and West Shell are representatives of a putative class of Cincinnati-area individuals who invested in Lloyd's as Names. Each plaintiff executed a General Undertaking Agreement ("General Agreement") with Lloyd's to become a Name. These General Agreements contain both a forum selection and a choice of law clause. The forum selection clause provides:

> Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's....

The choice of law clause states:

> The rights and obligations of the parties arising out of or relating to the Member's membership of, and/or underwriting of in-

* The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

surance business at, Lloyd's and any other matter referred to in this Undertaking shall be governed by and construed in accordance with the laws of England.

Each plaintiff also executed an Agency Agreement with R.W. Sturge, Ltd. ("Sturge") appointing Sturge as his Members' Agent. The Agency Agreements contain choice of law and forum selection clauses:[1]

23. ENGLISH LAW:

This Agreement shall be read and construed and take effect in all respects in accordance with English Law.

24. ENGLISH JURISDICTION:

Subject to Clause 22 hereof [permitting arbitration in London] the parties hereto irrevocably and unconditionally submit for all purposes of and in connection with this Agreement to the exclusive jurisdiction of the English Courts.

In most years, plaintiffs received profits, but in recent years they suffered losses. Although the outcome of their investments with Lloyd's is as yet undetermined, plaintiffs believe that their total losses will far exceed their profits.

On November 1, 1993, plaintiffs filed this action in the Court of Common Pleas in Hamilton County, Ohio, alleging that defendants Sturge, Lloyd's, the Corporation, and the Council violated Ohio securities law by selling unregistered and non-exempt securities in violation of chapter 1707 of the Ohio Revised Code. Under Ohio Rev.Code § 1707.43, "[e]very sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser." Plaintiffs sought to rescind the contracts and be returned to their original positions, offering to return any benefits which they had received from their investments with Lloyd's.

Defendants removed the action to the United States District Court for the Southern District of Ohio and filed a motion to dismiss for improper venue. Defendants have stipulated for purposes of their motion to dismiss that this action involves a security under Ohio securities law. A magistrate judge, following a hearing, recommended that the motion to dismiss for improper venue be granted. The District Court adopted this recommendation on December 22, 1993. Plaintiffs now appeal.

## II.

■ The enforceability of a forum selection clause is a question of law which we review de novo. *Bonny v. Society of Lloyd's,* 3 F.3d 156, 159 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992). The parties do not address the issue of whether federal or state law applies in determining the enforceability of forum selection clauses in a diversity action. However, we need not decide this issue because both Ohio and federal law treat these clauses in a similar manner. *General Electric Co. v. G. Siempelkamp GmbH & Co.,* 29 F.3d 1095, 1098 n. 3 (6th Cir.1994); *Interamerican Trade Corp. v. Companhia Fabricadora de Pecas,* 973 F.2d 487, 488–89 (6th Cir.1992).

■ A forum selection clause in an international agreement "should control absent a strong showing that it should be set aside." *Interamerican Trade Corp.,* 973 F.2d at 489; *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). "The correct approach [is] to enforce the forum clause specifically unless" plaintiffs "[can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916. The presumptive validity of the forum selection clause may also be set aside if plaintiffs can show that "trial in the contractual forum will be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in

---

1. The Agency Agreements also contain a clause permitting arbitration in London at the request of either party. Defendants contend that the District Court's dismissal of this action can be upheld on the alternate ground that this arbitration clause is enforceable. Because we find the forum selection clause to be enforceable, we need not address this issue.

court," *id.* at 18, 92 S.Ct. at 1917, or if "enforcement would contravene a strong public policy" of the forum state. *Id.* at 15, 92 S.Ct. at 1916.

In *Bremen,* the Supreme Court emphasized the importance of upholding forum selection and choice of law clauses in international contracts. *Bremen* involved a contract for towing a drilling rig from Louisiana to Italy with a provision for judicial resolution of disputes in England. The Court observed:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.

*Bremen,* 407 U.S. at 9, 92 S.Ct. at 1912.

Subsequently, in *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court considered the validity of clauses providing for arbitration in France under Illinois law in a contract for the sale of several German businesses. In upholding the clauses, the Court stated:

> [U]ncertainty will almost inevitably exist with respect to any contract touching two or more countries, each with its own substantive laws and conflict-of-laws rules. A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.

*Id.* at 516, 94 S.Ct. at 2455. The *Scherk* Court also discussed the danger of ignoring contractual dispute resolution provisions:

> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages.

*Id.* at 516–17, 94 S.Ct. at 2456. Given this background, we will now examine the enforceability of the forum selection provisions at issue in this appeal.

Plaintiffs contend that the clause is unenforceable because, together with the choice of law clause, it deprives investors of their substantive rights under Ohio securities law. Plaintiffs argue that they are entitled to a remedy based on what they classify as a "merit review" process under Ohio Rev.Code § 1707.13. Section 1707.13 permits the Ohio Division of Securities to prohibit the sale of securities which are "being disposed of or purchased on grossly unfair terms, in such manner as to deceive or defraud ... purchasers or sellers...." Plaintiffs rely on *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), an antitrust action where the Court enforced a clause providing for arbitration in Japan. The *Mitsubishi* Court did not decide whether the choice of law clause providing for Swiss law should be upheld, but noted in dicta that if the forum selection and choice of law clauses "operate[ ] in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations," the Court would find the agreement to be against public policy. *Id.* at 637 n. 19, 105 S.Ct. at 3359 n. 19.

The Second Circuit addressed this issue in *Roby v. Corporation of Lloyd's,* 996 F.2d 1353 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993), where the plaintiff Names, whose contracts contained substantially the same clauses as those in the present action, brought a federal securities and RICO [2] action against Lloyd's' syndicates and agents. The Names argued that the contract clauses effectively waived compliance with United States securities laws despite the anti-waiver provisions of these laws. The *Roby* court noted that forum selection and choice of law clauses could not be circumvented merely because foreign law or procedure might be different or less favorable than that of the United States. *Id.* at 1363; *Mitsubishi Motors,* 473 U.S. at 629, 105 S.Ct. at 3355. "Instead, the question is whether the application of the foreign law presents a danger that the ... Names 'will be deprived of *any* remedy or treated unfairly.'" *Roby,* 996 F.2d at 1363 (quoting *Piper*

---

2. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

*Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981)). The court rejected the plaintiffs' arguments because it found that they had ample remedies under English law and nothing suggested that the English courts were biased or unfair. *Roby,* 996 F.2d at 1363.

Both the Seventh and Tenth Circuits have also reached this result. In *Bonny,* 3 F.3d at 156, and *Riley,* 969 F.2d at 953, some Names ignored the forum selection provisions in their contracts and brought suits in the United States alleging violations of state and federal securities law and common law fraud. The Seventh and Tenth Circuits examined English law and concluded that the Names would be able to adequately pursue their claims in England.

We agree that plaintiffs have remedies which they can pursue in England. Plaintiffs seek rescission of their contracts under Ohio Rev.Code § 1707.43. The uncontroverted affidavit of Barrister John Lewis Powell shows that "[o]ne of the remedies under English law for misrepresentation (whether innocent, negligent or fraudulent) is rescission" and that a plaintiff "may also be entitled to an indemnity against liabilities incurred." Powell's affidavit also shows that plaintiffs can bring claims against defendants based on the tort of deceit, breach of contract, negligence, and breach of fiduciary duty. Although the Lloyd's Act of 1982 provides Lloyd's some immunity from damages, it does not preclude Names from obtaining injunctive, declaratory, rescissionary or restitutionary relief or preclude Names from damages where Lloyd's has acted in bad faith. *See Bonny,* 3 F.3d at 161–62.

Furthermore, Section 47 of England's Financial Services Act of 1986 provides a cause of action for any misleading statement or practice made for the purpose of inducing involvement in an investment agreement. *Bonny,* 3 F.3d at 161. Finally, England's highest appellate court recently upheld a lower court's ruling that Members' Agents can be contractually liable for negligent underwriting by the Managing Agents who run the insurance syndicates at Lloyd's. *Deeny v. Gooda Walker Ltd.,* slip op. (Q.B. Div'l Ct. Apr. 12, 1994), *appeal dismissed,* slip op. (H.L. July 25, 1994).

According to plaintiffs, the remedies available in England are not the equivalent of the merit review because they are grounded in misrepresentation and fraud and do not address the underlying wrong of defendants' alleged failure to subject themselves to Ohio's registration requirements. The fact that parties will have to structure their case differently than if they were litigating in federal court is not a sufficient reason to defeat a forum selection clause. *Bonny,* 3 F.3d at 162. We adopt the Second Circuit's reasoning in rejecting this argument:

·It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff simply would have to allege violations of *his country's* tort law or *his country's* statutory law or *his country's* property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading.

*Roby,* 996 F.2d at 1360 (emphasis in original).

█ Plaintiffs next argue that it would be unreasonable to enforce the forum selection clauses in light of the strong public policy behind Ohio's registration and merit review requirements. Citing *Bronaugh v. R. & E Dredging Co.,* 16 Ohio St.2d 35, 242 N.E.2d 572 (1968), plaintiffs contend that Ohio's registration requirements are intended to "pro-, tect the public from its own stupidity, gullibility, and avariciousness." *Id.* 242 N.E.2d at 576.

The District Court correctly held that under *Bremen,* plaintiffs must show that Ohio public policy outweighs the policies behind "supporting the integrity of international agreements." *Shell v. R.W. Sturge Ltd.,* 850 F.Supp. 620, 630 (S.D. Ohio 1993); *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

In *Bonny,* the court upheld the forum selection clauses despite the federal and state policies underlying protection for investors

against fraud and nondisclosure. 3 F.3d at 162. These interests are at least equal to, if not greater than, the interest Ohio has in protecting the public from its own lack of knowledge. We agree with the court in *Bonny* that "[g]iven the international nature of the transactions involved here, and the availability of remedies under British law that do not offend the policies behind the securities laws, the parties' forum selection and choice of law provisions contained in the agreements should be given effect."[3] *Id.*

██ Finally, plaintiffs contend that the District Court erred in enforcing the forum selection clauses in the contracts without first determining whether these contracts are void. Plaintiffs argue that the underlying contracts are voidable under Ohio Rev.Code § 1707.43 and that if the District Court had found them to be void, the forum selection clauses would be void as well. This is essentially another way of restating plaintiffs' argument that enforcement of the forum selection clauses deprives plaintiffs of a hearing on the merits of their claim.

### III.

Accordingly, the District Court's order granting defendants' motion to dismiss is AFFIRMED.

---

**3.** Plaintiffs rely on *Riedel v. Bancam, S.A.,* 792 F.2d 587 (6th Cir.1986), where we held that the act of state doctrine did not bar an action for failure to register under the Ohio securities laws, for the proposition that if Ohio public policies outweigh the act of state doctrine they outweigh the need for facilitating international transactions. We find *Riedel* to be inapposite. In *Riedel,* the plaintiff purchased certificates of deposit from a Mexican bank which was later nationalized. Plaintiff brought a claim under the Ohio securities laws after the bank paid him in pesos, rather than dollars, under Mexico's new currency exchange control regulations. In concluding that plaintiff could pursue his claim for failure to register, we did not examine the public policies behind the Ohio securities laws. Rather, we concluded that a decision on the merits of an action for failure to register would not require us to judge the validity of Mexico's exchange regulations. *Id.* at 592.