*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0432p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROSE WONG; PATRICK GIBSON,
          *Plaintiffs-Appellants,*

          *v.*

PARTYGAMING LTD.; PARTYGAMING PLC,
          *Defendants-Appellees.*

No. 08-4295

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-02376—Ann Aldrich, District Judge.

Argued: November 17, 2009

Decided and Filed: December 21, 2009

Before: MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Aparesh Paul, LEVIN & ASSOCIATES CO., L.P.A., Cleveland, Ohio, for Appellants. Behnam Dayanim, PAUL, HASTINGS, JANOFSKY & WALKER LLP, Washington, D.C., for Appellees. **ON BRIEF:** Aparesh Paul, Joel Louis Levin, Christopher M. Vlasich, LEVIN & ASSOCIATES CO., L.P.A., Cleveland, Ohio, Edward Willard Cochran, COCHRAN & COCHRAN, Shaker Heights, Ohio, for Appellants. Behnam Dayanim, Kelly A. DeMarchis, Jeremy P. Evans, PAUL, HASTINGS, JANOFSKY & WALKER LLP, Washington, D.C., for Appellees.

McKEAGUE, J., delivered the opinion of the court, in which GIBBONS, J., joined. MERRITT, J. (pp. 17-18), delivered a separate concurring opinion.

———————————

## OPINION

———————————

McKEAGUE, Circuit Judge. Rose Wong and Patrick Gibson (together "plaintiffs") filed a lawsuit on behalf of themselves and similarly situated Ohio residents against PartyGaming Ltd., a Gibraltar-based company which hosts online poker games. In the suit,

1

plaintiffs alleged breach of contract, misrepresentation, and violation of Ohio consumer protection laws. PartyGaming moved to dismiss the suit pursuant to a forum selection clause in its terms and conditions, which plaintiffs had agreed to when they registered on the site. The forum selection clause specified that all disputes would be subject to the exclusive jurisdiction of the courts of Gibraltar. Plaintiffs appeal the district court's dismissal of the suit sua sponte for forum non conveniens. For the following reasons, we **AFFIRM** the decision of the district court.

## I.

PartyGaming runs an online poker business, which plaintiffs actively participated in as players. It is a publicly owned Gibraltar company, with its shares traded on the London Stock Exchange. To participate in online poker games, customers must register on PartyGaming's website and agree to its "Terms and Conditions of Use." Two such terms and conditions are relevant to this suit. The first relevant term contains PartyGaming's anti-collusion policy, which states that customers are prohibited from holding more than one account and that PartyGaming is committed to preventing collusion and cheating. As part of its anti-collusion policy, PartyGaming also provides information on its website regarding a "Collusion Prevention System" used to identify and ban colluding players and detect multi-account players. The Terms and Conditions also provide that the agreement shall be governed by the laws of Gibraltar and any disputes shall be subject to the exclusive jurisdiction of the courts of Gibraltar. The first paragraph of the Terms and Conditions of Use contains the following warning: "IMPORTANT - PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY BEFORE ACCEPTING THIS AGREEMENT, THEN PRINT THESE TERMS AND CONDITIONS AND STORE THEM."

Plaintiffs originally filed a diversity suit against PartyGaming in September 2006 in the Northern District of Ohio. The suit alleged that PartyGaming, through its anti-collusion policy, affirmatively represented that collusion and multi-account players did not occur on its website. The suit also claimed that PartyGaming affirmatively represented that it did not encourage gambling by minors or gambling addicts. Plaintiffs contended that these representations were false and, as such, violated Ohio consumer protection laws, breached the agreement, and negligently, recklessly, or intentionally induced plaintiffs to join the

website. Plaintiffs sought certification of a class of all similarly situated individuals, which the district court provisionally certified, consisting of all persons in the state of Ohio who paid a registration fee on PartyGaming's website.[1]

PartyGaming failed to respond to plaintiffs' first amended complaint, and default was entered in January 2008. PartyGaming then moved to set aside default and argued that the suit should be brought in Gibraltar due to the forum selection clause. It subsequently filed a motion to dismiss plaintiffs' third amended complaint. The motion claimed improper venue under Federal Rules of Civil Procedure ("FRCP") 12(b)(3), due to the Gibraltar forum selection clause, and failure to state a claim under FRCP 12(b)(6), due to plaintiffs' failure to plead the elements of the causes of action.[2] In ruling on the motion, the district court found the Gibraltar forum selection clause valid, denied PartyGaming's motions as moot, and dismissed the action sua sponte for forum non conveniens. Plaintiffs filed this timely appeal and seek a reversal of the district court's dismissal.

**II.**

To support its dismissal for forum non conveniens, the district court cited to the Gibraltar forum selection clause. Thus, as a threshold matter, we must determine whether the clause should be enforced.[3] We review the enforceability of a forum selection clause de novo. *Preferred Capital, Inc. v. Assocs. of Urology*, 453 F.3d 718, 721 (6th Cir. 2006). In deciding this matter, we confront a choice-of-law issue of whether Ohio or federal law governs the inquiry into the enforceability of a forum selection clause when a federal court exercises diversity jurisdiction.

---

[1] A motion to certify a class of citizens of twenty-three other states was pending before the district court when the dismissal was ordered.

[2] PartyGaming asks us to consider the merits of its 12(b)(6) motion to dismiss. Because we affirm the district court's dismissal for forum non conveniens, we need not consider this argument.

[3] Plaintiffs argue that PartyGaming waived its right to enforce the forum selection clause under FRCP 12(h)(1) because it failed to timely respond to the complaint. Leaving aside the fact that the district court did not dismiss the suit under FRCP 12(b), plaintiffs' argument lacks merit because a party does not waive an argument under FRCP 12(b) simply by failing to timely respond. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (holding that a defect in personal jurisdiction was not waived by failing to make a timely appearance).

*1. Applicable Law*

To resolve this issue, we first look to the binding law of the Supreme Court and the law of this Circuit. In the context of admiralty cases, the Supreme Court has announced a federal policy favoring enforcement of forum selection clauses and has held that such clauses "should control absent a strong showing that [they] should be set aside." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 591 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). The Court has also stated that federal law governs the inquiry when a federal court, sitting in diversity, evaluates a forum selection clause in the context of a 28 U.S.C. § 1404(a) motion to transfer venue or in the context of any federal statute. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988). The Court has provided guidance in these two contexts, but it has declined to decide the *Erie* issue of which law governs when a federal court, sitting in diversity, evaluates a forum selection clause in the absence of a controlling federal statute. *Id.* at 25–26.

The Sixth Circuit has also declined to answer this question. In the past, we have noted that we did not need to decide the issue because both federal and state law treat forum selection clauses similarly.[4] While our past decisions have maintained harmony between federal and state courts on the issue, a review of recent state cases reveals the possible emergence of differences in how state and federal law treat the enforcement of forum selection clauses. *Compare Assocs. of Urology*, 453 F.3d at 723–24 (holding enforceable a forum selection clause that did not identify a particular jurisdiction), *with Preferred Capital, Inc. v. Power Eng'g Group*, 860 N.E.2d 741, 746 (Ohio 2007) (holding void as against Ohio public policy a forum selection clause that did not identify a particular jurisdiction); *see also Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*,

---

[4]*See, e.g., Assocs. of Urology*, 453 F.3d at 721 ("We need not consider whether to apply state or federal law . . . because Ohio law and federal law treat forum selection clauses similarly."); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999) ("[T]his court has not decided whether a federal court sitting in diversity jurisdiction evaluated the enforceability of a forum-selection clause under the rule of *Zapata* or under the applicable state rule."); *Baker v. LeBoeuf, Lamb, Lieby, & Macrae*, 105 F.3d 1102, 1105 (6th Cir .1997) ("We need not consider whether federal or state law applies to this issue, because federal and Ohio law treat forum selection clauses similarly."); *Shell v. R.W. Sturge*, 55 F.3d 1227, 1229 (6th Cir. 1995) ("[W]e need not decide this issue because both Ohio and federal law treat these clauses in a similar manner.").

489 F.3d 303, 306 (6th Cir. 2007) (noting that differences have emerged between Ohio and federal law).  Specifically, Ohio courts have held that forum selection clauses are less readily enforceable against consumers, which is a distinction that federal courts do not recognize.  *Info. Leasing Corp. v. Jaskot*, 784 N.E.2d 1192, 1195 (Ohio Ct. App. 2003).  Ohio state courts have also noted the differences between federal and state law on the enforceability of forum selection clauses.  *Id.*

Because this Circuit has not affirmatively decided which law governs when a federal court sits in diversity, we look to the law of other Circuits for guidance.  In deciding this issue, six Circuits have held that the enforceability of a forum selection clause implicates federal procedure and should therefore be governed by federal law.[5] Both the Seventh and Tenth Circuits have held that the law which governs the contract as a whole also governs the enforceability of the forum selection clause.  *See, Abbott Labs. v. Takeda Pharms. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity . . . of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract . . . ."); *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir. 2006) ("We see no particular reason . . . why a forum-selection clause . . . should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties.").  The First Circuit has not affirmatively decided the issue. *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 16 (1st Cir. 2009) ("[W]e need not reach the unsettled issue of whether 'forum selection clauses are treated as substantive or procedural for *Erie* purposes.'").  Finally, different panels in the Fourth Circuit have reached different results on the issue.  *Compare Bryant Elec. Co. v. City of Fredericksburg*, 762 F.2d 1192, 1196 (4th Cir. 1985) ("[T]his Court has applied

---

[5] *See, e.g., Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009) ("[E]nforcement . . . of the contractual forum selection clause was a federal court procedural matter governed by federal law."); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) ("We apply federal law to the interpretation of the forum selection clause."); *Ginter ex. rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) ("We begin with federal law, not state law, to determine the enforceability of a forum-selection clause."); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("[T]he rule set out in *M/S Bremen* applies to the question of enforceability of an apparently governing forum selection clause, irrespective of whether a claim arises under federal or state law."); *P & S Bus. Machs. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("Consideration of whether to enforce a forum selection clause in diversity suit is governed by federal law . . . ."); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law.").

[*The Bremen*] reasoning in diversity cases not involving international contracts."), *with Nutter v. New Rents, Inc.*, 1991 WL 193490 at *5 (4th Cir. 1991) ("In this diversity action, we apply the conflicts of law rules of West Virginia, the state in which the district court sits.").

Given the possibility of diverging state and federal law on an issue of great economic consequence, the risk of inconsistent decisions in diversity cases, and the strong federal interest in procedural matters in federal court, we find persuasive the law used in the majority of circuits and now adopt it. As the Ninth Circuit has noted, forum selection clauses significantly implicate federal procedural issues. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Further, while we recognize that we are not bound by the law of other Circuits, this court has also routinely looked to the majority position of other Circuits in resolving undecided issues of law. *See, e.g., McKnight v. Gen. Motors Corp.*, 550 F.3d 519, 527–28 (6th Cir. 2008) (following the "majority position" in interpreting Title I of the ADA). We also take note of the importance of maintaining harmony among the Circuits on issues of law. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 304 (2001); *United States v. Warren*, 973 F.2d 1304, 1309 (6th Cir. 1992). We therefore hold that in this diversity suit, the enforceability of the forum selection clause is governed by federal law.[6] We now turn to the merits of the enforceability of the forum selection clause.

*2. Enforceability of the Forum Selection Clause*

A forum selection clause should be upheld absent a strong showing that it should be set aside. *Shute*, 499 U.S. at 595. When evaluating the enforceability of a forum selection clause, this court looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated

---

[6]This holding does not offend our decision in *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303 (6th Cir. 2007). In that case, we held that state law governs "when the clause is raised as the sole basis for personal jurisdiction over the defendant." *Id.* at 306. We took note of Ohio's interest in using its courts to obtain personal jurisdiction over an out-of-state defendant pursuant to a forum selection. *Id.* at 308. In this case, the forum selection clause is not raised to obtain personal jurisdiction over PartyGaming. Therefore, the issues in *Sarasota Kennel Club* do not arise here.

forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999). The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).

Under the first factor, the party opposing the clause must show fraud in the inclusion of the clause itself. *Assocs. of Urology*, 453 F.3d at 722. "General claims of fraud [] do not suffice to invalidate the forum selection clause." *Id.* (internal quotations omitted). We have previously upheld a finding that the inclusion of a forum selection clause was fraudulently induced where the party seeking to enforce the clause had affirmatively represented that disputes would be resolved in a forum different from that dictated by the forum selection clause. *Great Earth Cos. v. Simons*, 288 F.3d 878, 884, 890 (6th Cir. 2002). On the other hand, we have upheld a forum selection clause where the party opposing the clause failed to offer any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the agreement. *Assocs. of Urology*, 453 F.3d at 722. In the case at bar, plaintiffs argue that the Gibraltar forum selection clause was obtained by fraud because PartyGaming falsely represented that collusion and multi-account players did not occur on its website. In advancing this claim, plaintiffs argue general fraud only, rather than fraud in the inclusion of the clause itself. *See id.* Plaintiffs do not allege that PartyGaming falsely represented the chosen forum, as was the case in *Simons*. Nor do they contend that their agreement to the forum selection clause was obtained unknowingly or unwillingly. Thus, plaintiffs have not shown the clause to be unenforceable under the first prong.

Under the second factor, plaintiffs must show that a Gibraltar court would ineffectively or unfairly handle the suit. *Sec. Watch, Inc.*, 176 F.3d at 375. Different or less favorable foreign law or procedure alone does not satisfy this prong. *Shell*, 55 F.3d at 1230. Rather, the foreign law must be such that a risk exists that the litigants will be denied any remedy or will be treated unfairly. *Id.* Under this prong, we have previously enforced forum selection clauses that specified an English forum, a German forum, and

a Brazilian forum.  *See Shell*, 55 F.3d at 1229, 1232; *Gen. Elec., Co. v. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994); *Interamerican Trade Corp. v. Companhia Fabricadora de Pecas*, 973 F.2d 487, 489 (6th Cir. 1992).

In the present case, both parties agree that Gibraltar, as a British territory, is governed by English law.  Plaintiffs contend that Gibraltar would not be an adequate forum because (1) Gibraltar does not allow jury trials and (2) Gibraltar does not allow class-action suits for damages.  As to plaintiffs' first claim, this argument ignores our precedent upholding an alternative forum even when jury trials were unavailable.  *See Interamerican Trade Corp.*, 973 F.2d at 489 (noting that a jury trial is not available in Brazil).  Further, almost all non-U.S. forums would be inadequate under plaintiffs' argument because few countries outside of the United States offer jury trials in civil cases.  *See Holland Am. Line, Inc. v. Wartsila N. Amer. Inc.*, 485 F.3d 450, n.4 (9th Cir. 2007).  Finally, other Circuits have held that lack of jury trials does not render a forum inadequate.  *See, e.g., Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 23–24 (1st Cir. 2009); *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991).  Thus, plaintiffs' first argument lacks merit.

Turning to the second argument, plaintiffs offer a statement from an English lawyer and cite English case law to support their claim that Gibraltar does not allow class-action suits for damages. PartyGaming counters with its own expert statement and case citation, claiming that the suit could be maintained in class-action form. Fortunately, we need not decide whether a suit could be maintained in class form in Gibraltar because, even assuming that plaintiffs are correct, the  unavailability of representative litigation would not render the forum ineffective.  "The fact that parties will have to structure their case differently than if they were litigating in federal court is not a sufficient reason to defeat a forum selection clause."  *Shell*, 55 F.3d at 1231.  Plaintiffs have not alleged that they *could not* bring the suit in Gibraltar, but only that they could not bring it in class form.  Thus, they have not shown that Gibraltar would be an ineffective or unfair forum.

To meet the third prong of our test, the plaintiff must show that enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable. *Assocs. of Urology*, 453 F.3d at 722–23. This finding must be based on more than mere inconvenience of the party seeking to avoid the clause. *Id.* We have previously held that enforcement of a forum selection clause would not be unreasonable where the opposing party failed to produce any evidence that it was exploited or unfairly treated. *Siempelkamp GmbH & Co.*, 29 F.3d at 1099. Further, the Supreme Court has held that a forum selection clause is not unreasonable simply because it appears in a non-negotiated consumer contract. *Shute*, 499 U.S. at 594. In this case, plaintiffs are not sophisticated business entities with the ability to negotiate the forum, and continuing the suit in Gibraltar would no doubt be an inconvenience. Yet even with these considerations, plaintiffs have not carried their "heavy burden" of showing that enforcing this forum selection clause would be unjust or unreasonable. *See id.* at 595. Aside from their claims that a Gibraltar forum forecloses the possibility of a jury trial or class-action suit, plaintiffs have failed to show how litigating in Gibraltar would be such an inconvenient forum to yield it unjust or unreasonable. We therefore affirm the district court's conclusion that the forum selection clause is enforceable. We now turn to the district court's dismissal for forum non conveniens.

### III.

This court reviews a district court's dismissal for forum non conveniens for an abuse of discretion. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. World-Wide*, 545 F.3d 357, 363 (6th Cir. 2008). Forum non conveniens is a flexible doctrine. *Id.* at 364. When a district court weighs the relevant factors, its decision deserves substantial deference. *Id.* In weighing these factors, the district court must first establish an adequate alternative forum. *Id.* Then, the court must weigh the relevant public and private factors. *Id.* The court should also give deference to the plaintiff's choice of home forum. *Id.* at 365.

At the outset, we address the district court's sua sponte dismissal for forum non conveniens. Plaintiffs argue that the dismissal amounted to an abuse of discretion

because the district court raised forum non conveniens sua sponte. Plaintiffs claim that the district court was not properly briefed on the relevant forum non conveniens factors because the court was evaluating a motion to dismiss for improper venue under FRCP 12(b)(3), rather than a motion to dismiss for forum non conveniens. Under our precedent, a district court does not abuse its discretion simply by sua sponte raising forum non conveniens. *Estate of Thomson*, 545 F.3d at 364 (citing *Chambers v. NASCO*, 501 U.S. 32 (1991)). The doctrine falls within the court's inherent authority. *Id.* So long as the district court has "facts relevant to the issue of forum non conveniens," it can raise the doctrine on its own accord. *Id.* at 365. In this case, the court had pending before it PartyGaming's motion to dismiss for improper venue. Given that forum non conveniens is simply "a supervening venue provision," facts relevant to the motion to dismiss for improper venue would also be relevant to the forum non conveniens analysis. *See id.* at 364 (internal quotations omitted). Further, this court has previously held that a forum selection clause should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002). Thus, the district court here could not have enforced the forum selection clause through PartyGaming's motion to dismiss under FRCP 12(b)(3). It therefore did not abuse its discretion by sua sponte raising forum non conveniens. We now turn to the district court's forum non conveniens analysis.

### 1. Adequate Alternative Forum

Under the first part of the analysis, an adequate alternative forum must be identified. *Stewart v. Dow Chems. Co.*, 865 F.2d 103, 106 (6th Cir. 1989). This requirement will be satisfied if the defendant is "amenable to process" in the foreign jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981). An alternative forum is inadequate if "the remedy provided by [it] is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. Less favorable law in the alternative forum will not, on its own, make the forum inadequate. *Id.* In this case, the district court determined that Gibraltar was an appropriate alternative forum. Plaintiffs

argue that this finding was an abuse of discretion because (1) the district court did not determine whether PartyGaming was amenable to process in Gibraltar and (2) the district court did not consider their claim that they could not maintain their suit in class form. In making these arguments, plaintiffs do not claim that Gibraltar is an inadequate forum; rather, they merely attack the thoroughness of the district court's determinations on the issue. Neither of their claims amounts to "a clear abuse of discretion" warranting reversal. *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986). To begin with, plaintiffs have not cited to any case law which requires the district court to make specific findings on the issue, nor have we found any. As the Supreme Court has noted, forum non conveniens analysis does not turn on any one factor. *Piper Aircraft*, 454 U.S. at 250.

Moving to the specifics of their first argument, plaintiffs correctly note that a forum will generally be deemed adequate if the defendant is amenable to process. *See Piper Aircraft*, 454 U.S. at 255 n.22. Plaintiffs also correctly note that the district court in this case did not make a specific finding on whether PartyGaming is amenable to process in Gibraltar. However, their argument fails to show an abuse of discretion because this case presents no real question of whether PartyGaming is amenable to process in Gibraltar. PartyGaming consented to submit itself to the jurisdiction of Gibraltar with the forum selection clause and, thus, is amenable to process there. *See Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 336 (6th Cir. 2001) (finding Sierra Leone an adequate forum where defendants had agreed to submit themselves to its courts); *Stewart*, 865 F.2d at 107 (finding Canada an adequate alternative forum where defendant agreed to submit to Canadian jurisdiction). Further, the district court found that PartyGaming is a Gibraltar corporation, with its principal place of business in Gibraltar. This finding also indicates that PartyGaming is amenable to process there. *See Venture Global Eng'g, LLC v. Satyam Comp. Servs. Ltd.*, 233 F. App'x 517, 521 (6th Cir. 2007) (noting that defendant was an Indian corporation and thus amenable to service in India). Thus, plaintiffs have failed to show an abuse of discretion on this issue.

In their second claim, plaintiffs argue that the district court abused its discretion by failing to consider their expert's opinion that they could not maintain a class-action suit in Gibraltar. While the district court did not make a specific finding on plaintiffs' expert, it did acknowledge, and ultimately rejected, plaintiffs' claim that they could not bring the suit in class form. Further, even assuming that plaintiffs correctly characterize Gibraltar law, the inability to bring a class suit would not render Gibraltar an inadequate alternative forum. In *Piper Aircraft*, the Supreme Court noted that the alternative forum had to be so inadequate such that "no remedy at all" was available. 454 U.S. at 254. "[D]ismissal on the grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Id.* at 250. Thus, the district court did not abuse its discretion in finding Gibraltar to be an adequate alternative forum.

### 2. Public Factors

After the district court determines that an adequate alternative forum exists, it must weigh the relevant public and private factors in favor of a different forum. *Estate of Thomson*, 545 F.3d at 364. The public factors include court congestion, local interest in the matter, interest in having the trial at home with the law that governs, avoidance of conflict-of-law problems or application of foreign law, and unfairness in burdening local citizens with jury duty. *Id.* In this case, the district court found that public factors weighed in favor of a Gibraltar trial because PartyGaming is a Gibraltar company, whose operations might be greatly affected by the suit, and other Gibraltar gaming companies might be affected by the suit. The district court further found that Gibraltar law would govern the suit, due to the choice-of-law clause, and Gibraltar had an interest in hearing "a case involving a substantial player in [its] comparatively small economy." Mem. & Order of Sept. 30, 2008 at 10.

In claiming an abuse of discretion, plaintiffs cite Ohio's interest in having its consumer protection laws enforced and claim that the district court did not separately analyze the choice-of- law provision to determine its enforceability. While Ohio might have an interest in this matter, this court has held, and the district court noted, that when

state law conflicts with a forum selection clause, the court should not categorically uphold the state policy over the clause. *Kerobo*, 285 F.3d at 538. While *Kerobo* applied to a pending § 1404(a) motion to transfer venue, its analysis applies equally in the forum non conveniens context. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (noting that § 1404(a) is the statutory replacement of the common law doctrine of forum non conveniens). Further, Ohio has no interest in the laws of the twenty-three other states over which plaintiffs seek class certification. But Gibraltar would have an interest over the entire suit.

In their second argument, plaintiffs claim that the district court abused its discretion by finding that Gibraltar law governs without separately evaluating the enforceability of the choice-of-law clause under Ohio law. Plaintiffs argued in the district court that the Gibraltar choice-of-law provision was not enforceable because Ohio has significantly greater interest in the case. In response, the district court simply stated "it is clear from the governing law clause that Gibraltar law should be applied." Mem. & Order at 10. To begin with, it is not clear from our case law whether the district court was required to separately conduct a choice-of-law analysis for forum non conveniens purposes. *See Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, n.13 (1st Cir. 2009) ("IPI also argues that the district court should have made a clear choice of law ruling. IPI has not cited to any authority for this proposition nor have we found any . . . .").

Further, the choice-of-law clause was only one public factor advanced by the district court for its decision. The court's decision is also supported by its finding that Gibraltar has an interest in the litigation. *See Piper Aircraft*, 454 U.S. at 260 (noting that other public interest factors weighed in favor of a Scotland trial even if the district court improperly found Scottish law applied). Finally, plaintiff's argument that Ohio has a significantly greater interest in the matter would not, on its own, render the choice-of-law provision unenforceable. *See DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 (6th Cir. 2006) (noting that a choice-of-law provision will usually be given effect unless it would be contrary to a fundamental policy of a state

with a materially greater interest in the issue); *Sekeres v. Arbaugh*, 508 N.E.2d 941, 942 (Ohio 1987).  Thus, we conclude that the district court did not abuse its discretion in finding that public factors weigh in favor of a Gibraltar forum.

### 3. Private Factors

In weighing private factors, the district court should consider the ease of access to evidence, ability to obtain witness attendance, and practical problems such as ease, expeditiousness, and expense.  *Estate of Thomson*, 545 F.3d at 364.  In this case, the district court found that private factors weighed in favor of a Gibraltar forum because relevant evidence and witnesses would be located there.  The court further found that plaintiffs would not encounter many obstacles litigating in Gibraltar.  Finally, the district court advanced the forum selection clause as a private factor weighing in favor of a Gibraltar forum.  Plaintiffs claim that this was an abuse of discretion because nothing in the record indicates that relevant witnesses and documents are located in Gibraltar and modern technology makes close proximity to evidence unnecessary.  We agree with plaintiffs that the district court was not fully briefed on the location of possible evidence and witnesses.  *See Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("The limited extent to which the district court considered ease of access [] supports our conclusion that overall the relevant factors were not properly weighed . . . .").  However, this represented only one factor used by the district court in its determination that private factors weighed in favor of a Gibraltar forum.  Even if the district court erred in this finding, the Gibraltar forum selection clause weighs strongly as a private factor given our policy favoring enforcement of these clauses.  *See M/S Bremen*, 407 U.S. at 9–10.  Thus, we conclude that the district court did not abuse its discretion in finding that private factors weigh in favor of Gibraltar.

### 4. Deference to Plaintiffs' Choice of Forum

Finally, plaintiffs argue that the district court abused its discretion because it did not give proper deference to their choice of a home forum.  Plaintiffs cite to our decision in *Duha v. Agrium Inc.*, 448 F.3d 867 (6th Cir. 2006), to support their argument.  In that case, we reversed the district court's dismissal for forum non conveniens in part because

the district court did not give heightened deference to the plaintiff's home forum. *Id.* at 874. While deference should be afforded to a U.S. plaintiff's choice of home forum, choice of home forum is not a dispositive issue. *Compare Duha*, 448 F.3d at 874 (finding U.S. plaintiff's choice of home forum outweighed Argentina as alternative forum), *with Estate of Thomson*, 545 F.3d at 365 (upholding dismissal for forum non conveniens where South Africa was alternative forum). More importantly, the facts in this case are distinguishable from those in *Duha* because a forum selection clause was not at issue in that case. When dismissing for forum non conveniens pursuant to a forum selection clause, federal courts have generally given less deference to a plaintiff's choice of home forum. *See, e.g., Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 511 (2d Cir. 1998) ("[T]he district court would begin its forum non conveniens assessment of *Gulf Oil* factors with a level set of balances, rather than one weighted heavily in favor of plaintiff's choice of forum."); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue."); *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[W]e see no reason why a court should accord deference to the forum in which the plaintiff filed its action."). Thus, the district court did not abuse its discretion by not giving deference to plaintiffs' choice of home forum.

**IV.**

For the foregoing reasons, we **AFFIRM** the decision of the district court.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring.  I concur in much of the reasoning of the court, if we look at the problem in a purely legalistic way.  But for me the most important considerations are not the splits in the circuits or the ambiguities inherit in the existing law on forum selection clauses, but rather the fact that the gambling contract entered into between the parties here is likely illegal in Ohio but completely legal in Gibraltar.  If we read Ohio law as controlling the contract in question, the parties probably are guilty of a crime under Ohio law, the contract is void, and both parties could be extradited and prosecuted together in an Ohio criminal court.[1]

Surely the parties assumed that if the plaintiff won at gambling, the plaintiff would get some money and if the plaintiff lost, the winner and the house would split the winnings.  So when the plaintiff comes into court and says he wants money in an Ohio court under what he regards as an Ohio contract, but does not want the Ohio court to say that under the governing Ohio law the gambling contract is illegal, the plaintiff is a bit inconsistent in his logic, to say the least.

This illegality factor is particularly salient because the defendant now reports that it has completely stopped carrying on its online gambling business in Ohio and in the United States because Congress recently passed a criminal statute outlawing this kind of internet gambling.  *See* Unlawful Internet Gambling Enforcement Act (UIGEA) of 2006, 31 U.S.C. §§ 5361-5367 (effective October 13, 2006).

Obviously, neither the plaintiff nor the defendant's employees want to go to jail in Ohio.  On a principle analogous to the rule of lenity I would interpret the forum selection clause as controlled by English law which, so far as I can tell, is the only way

---

[1] *See* OHIO REV. CODE ANN. § 2915.02(A) (2003) (prohibiting any person from engaging in "conduct that facilitates any game of chance conducted for profit" or "engag[ing] in betting or in playing any scheme or game of chance as a substantial source of income or livelihood"); OHIO REV. CODE ANN. § 2915.01(D) (2003) (defining poker as a game of chance) (unrelated section of statute held unconstitutional by *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, No. 08AP-1032, 2009 WL 2101479 (Ohio Ct. App. Jul. 16, 2009)); OHIO REV. CODE ANN. § 3763.01 (2003) (gaming contracts void).

to keep the contract from being void and subject to criminal penalties.[2]  It also reduces the risk that the plaintiff and others will go to jail under Ohio law or even under the Federal Wire Act or RICO.[3]

Now, of course, the parties have not raised this point.  Neither wants to admit the existence of any criminal law problem with their activities.  But sometimes courts have to raise embarrassing questions that both parties to litigation had rather we overlooked.

---

[2] "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.  This venerable rule not only vindicates the fundamental fairness principle that no citizen should be held accountable for a violation of a statue whose commands are uncertain, or subjected to punishment that is not clearly prescribed.  It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *U.S. v. Stantos*, 128 S.Ct. 2020, 2025 (2008) (internal citations omitted).

[3] *See* 18 U.S.C. § 1084 (2000) (unlawful to "use a wire communication facility for the transmission in interstate and foreign commerce of bets and wagers on sporting events and contests, and for the transmission of a wire communication which entitled the recipient to receive money and credit as a result of bets and wagers."); 18 U.S.C. § 1962(c) (2000) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.")